COMMONWEALTH *vs.* LOUIS MERCIER.

Berkshire.        September 21, 1926. — October 30, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Homicide. Practice, Criminal,* Postponement of trial, Common Law Rule 24 of the Superior Court (1923), View, Opening statement by district attorney, Closing argument by district attorney, Exceptions. *Pleading, Criminal,* Bill of particulars. *Evidence,* Competency, Relevancy and materiality.

The provisions of Common Law Rule 24 of the Superior Court (1923) do not prevent a granting by a judge of the Superior Court of a postponement of a trial of an indictment for murder from a date to which it had been assigned to a later date for cause orally shown by the district attorney and without the filing by him of the affidavit described in the rule.

It was within the discretionary power of the judge presiding at the trial of an indictment charging murder by a deadly poison to refuse to grant a motion for particulars specifying the name of the deadly poison relied on by the Commonwealth as causing the death.

It was not error for the judge presiding at the trial of an indictment, after instructing the jury, who were about to take a view, that the view must be conducted in accordance with the oath administered to the officers under which they were permitted to view the premises together with any marks or objects thereon or relating thereto which might be pointed out by counsel named in the oath, further to state to the jury that what they would see on the view would be competent evidence for them to consider.

It was not error to permit the district attorney in his opening statement at the trial of an indictment to state the substance of conversations with the defendant in the district attorney's presence which would be proved by witnesses to be called.

At the trial of an indictment charging murder by poisoning, where evidence of the Commonwealth tended to show that the poison which caused the death was a cyanide which was found in the body of the deceased at an

autopsy performed after the body was embalmed, it was proper to permit the Commonwealth, in order to show that the embalming fluid contained no cyanide, to introduce in evidence bottles of embalming fluid, together with evidence that, if such fluid were not part of the same fluid used in embalming the body of the deceased, "It was the same fluid, the same formula" and that all embalming fluids were the same thing.

At the trial of an indictment charging murder of a woman, it was within the discretionary power of the judge in the course of the cross-examination of a chief of police who, at a preliminary hearing in a district court, had testified as to a conversation he had with the defendant after the homicide, to exclude questions, whether there were some material additions to the testimony as given by him in the District Court, what he had said on the stand that he did not say in the District Court, and whether he testified in the District Court that the defendant told him he had deserted his wife; where it appeared that the witness had been cross-examined at length on the subject of his testimony in the District Court, defendant's counsel during such cross-examination having in his hands a transcript of the evidence there, and that the witness had testified that there were many things said to him by the defendant in the conversation, which lasted several hours, which were omitted from his testimony in that court, that many questions were asked by counsel in that court, and that he did not then go into details as he had done at the trial.

At the trial of an indictment charging murder of a woman, the defendant's wife, much must be left to the discretion of the trial judge as to the admissibility of evidence to prove that the defendant had a motive for the killing, and it is not necessary that each piece of evidence to be admissible should be sufficient standing alone to prove a motive: it is enough that it has some probative value.

At the trial of an indictment charging murder in Pittsfield on February 13 of the defendant's wife, there was evidence for the Commonwealth showing that the defendant in the spring preceding the crime had been in Lawrence for several weeks and also had been there just before Christmas, less than two months before the crime, after he had been discharged from employment in Pittsfield; that as to the second occasion he first had told the chief of police at Pittsfield after the crime that he had taken his wife and family with him and later had said to the chief of police that he went alone; and that just before the murder he had said to another person that he had one "girl" in Pittsfield and in Lawrence a woman with whom he was intimate while her husband worked nights. A brother-in-law of the defendant testified that the defendant had said to him at the time of the Christmas visit in Lawrence that everything was going better; that his folks gave him all his furniture and that he had brought a coat for the witness's sister. Subject to an exception by the defendant, the brother-in-law was permitted to state that the defendant told him he went to Lawrence after "booze," that he made a few cents on it and wanted to make a few cents more; that he wanted to make money in "booze." *Held*, that

(1) The evidence excepted to was admissible within the discretion of the trial judge;

(2) The evidence being material, the mere fact that it disclosed participation by the defendant in another crime did not make it incompetent;

(3) In this case, in so far as the evidence tended to prove another crime, the defendant was protected by instructions given by the judge in his charge to the effect that the fact that a person had committed a crime is not evidence that he committed any other crime.

At the trial of an indictment for murder, evidence, that while in prison saws such as might be used in cutting prison bars were found sewed into the defendant's trousers when a search of his prison cell was made, was admissible as tending to show consciousness of guilt in connection with testimony by the defendant that he received the saws while in prison and sewed them into his clothing fearing that if they were found people might think he was trying to escape.

At the trial of an indictment, after witnesses for the Commonwealth had been subjected to cross-examination respecting testimony by them at a preliminary hearing in a district court, it is proper for the judge to allow the district attorney in rebuttal to put in all that the witnesses said in the District Court on the subject to which the defendant's questions were directed in order to clear up any erroneous impression which might have been made on the jury by those questions or the form in which they were phrased; in so far as any material testimony was then first introduced by the district attorney's questions, it was within the judge's discretion to admit such evidence at that time.

At the trial of the indictment above described, it appeared that a toxicologist had examined the stomach of the deceased with a view to determining whether there was evidence of poison and, if so, of what poison. Subject to exception by the defendant, he was asked and was permitted to answer the questions: "Have you any question that the poison that killed this woman was cyanide of potassium?" and "Is there any question in your mind but that hydrocyanic acid was the cause of her death, in this case?" In cross-examination by the defendant, the witness stated that the way he wanted to leave the matter was that, assuming that the stomach examined by him came from the body of the deceased, then in his opinion she died from the effect of a cyanide and hydrocyanic acid. *Held,* that

(1) The exception must be overruled, since it was apparent from the whole examination of the witness that he intended to testify to the cause of death of the person whose stomach he examined and that he did not intend to give testimony to the effect that the stomach which he examined was that of the woman for whose death the defendant was being tried, and it did not seem likely that the jury could have understood the questions and answers in any other sense;

(2) If error were committed in the admission of the questions, it was cured by the testimony of the witness under cross-examination.

In cross-examination of the medical expert called by the Commonwealth, the defendant asked, "So far as the story was given to you of this woman's death . . . it might have been a case of apoplexy?" and answered, "It might, but I don't believe it was." A motion by the defendant to strike out the latter part of the answer was denied. *Held,* that the denial was proper within the discretion of the judge, as it might

well be that a part of the answer would not fairly state the witness's opinion in answer to the question.

The toxicologist who testified for the Commonwealth at the trial above described, after he had testified in rebuttal that in tests made upon the stomach of the deceased he obtained "a residue with which I tested for the presence of cyanide," was asked by the district attorney, "Which cyanide?" and answered, "Sodium cyanide. By Dr. Howard's testimony it would be shown that the alcohol would remove the ferrocyanide from this extract, so that it could not be present, and if I obtained the test for cyanide, it had to be a soluble cyanide or sodium cyanide." A motion by the defendant to strike out the answer was denied subject to exception by the defendant. *Held*, that, the answer being in part responsive, the motion properly was denied; if the defendant intended to object to a part of the answer he should have designated the part.

The toxicologist, having testified in cross-examination that his reason for testing a certain embalming fluid for cyanide was because some of it would touch the outside wall of the stomach, was asked by the defendant's counsel: "Might some of the results of the fluid touching the outside of the stomach wall produce a positive test for cyanide?" His answer was, "Yes, and there was none present." A motion by the defendant to strike out the "latter part," of the answer was denied. *Held*, that the denial could not be said to have been an improper exercise of discretion by the trial judge.

Certain exceptions to the admission of questions asked in cross-examination of the defendant at the trial of the indictment above described were overruled because, in so far as the witness made denials of the matters asked about, there was no evidence against him; in so far as the questions were framed to test the accuracy of his previous testimony, there was no valid objection to them; and in so far as they sought to show that he was neglectful of his wife or indifferent toward her and that he was attentive to other women, and in so far as they tended to contradict his testimony, they were admissible in the discretion of the trial judge.

A defendant at the trial of an indictment cannot complain of the introduction by the Commonwealth of evidence favorable to himself.

At the trial of the indictment above described, the defendant contended that his wife, thinking that she was taking medicine, administered to herself cyanide of potassium which the defendant had procured from a nearby plating plant to get rid of rust in a key hole of a bank belonging to his children and which he had put in a bottle which formerly had contained paregoric and had placed in a cupboard in the house which he and his wife and family occupied. Evidence offered by him to show that an optician and optometrist in the same city kept the same substance in his office and at his house for cleaning purposes was excluded. *Held*, that the exclusion was proper.

At the trial of the indictment above described, the mother of the defendant testified in his behalf. In her cross-examination, the Commonwealth offered certain letters written by her in May, August and September before the homicide in February, some to the defendant and some to his wife, the contents of which contradicted testimony of the mother

in her direct examination. The defendant objected to the letters as a whole. The judge admitted them, ruling that they were not evidence of any facts stated in them, but were admitted solely as bearing upon the credibility of the witness. *Held*, that

(1) So far as the letters contradicted the witness on collateral matters, their admission was within the discretion of the trial judge;

(2) At least a portion of the letters was competent and therefore the exception to their admission as a whole must be overruled, since there was no request by the defendant that immaterial and incompetent portions be excluded.

Rulings by the judge presiding at the trial of the indictment above described admitting certain evidence of the Commonwealth in rebuttal were *held* not to have been an abuse of judicial discretion.

Evidence of facts ascertained by an officer while, in excess of the authority conferred upon him by a mittimus directing the defendant's confinement, he took him to several places before committing him to confinement, was competent and admissible.

A motion that a verdict of not guilty be ordered in the trial above described properly was denied, there being sufficient evidence to justify the jury in finding that the defendant intended to cause the death of his wife by poison which he had procured and that her death was thus caused by him.

Remarks by the district attorney in his closing argument, to the effect that a portion of the closing argument by the counsel for the defendant was insincere and false and that it was "false because this man is guilty, and because I believe that that man that addressed you knows it as well as I do," and "He may believe — he has a right to as his counsel — the lying stories this defendant has told him," afterwards withdrawn by the district attorney upon objection by the defendant's counsel, were *held*, in the circumstances and in view of the rulings by the trial judge, not to have prejudiced the defendant.

An exception by the defendant to an uncompleted sentence by the district attorney in his closing argument, which the district attorney withdrew on objection by the defendant's counsel, was overruled.

As to exceptions by the defendant to closing sentences of the argument by the district attorney at the trial above described, this court *stated* that such portion of the address, taken in its entirety, was an argument for obedience to law and for the settlement of issues in court by true verdicts of juries and that it was within the limits of what is permissible in argument, and, the defendant not pointing out to the trial judge any specific objections to such portion of the argument nor asking to have the jury instructed to disregard it, the exceptions were overruled.

At the trial above described, the trial judge admitted evidence of statements by the defendant's wife which might be interpreted to mean that she intended to commit suicide, and ruled that the Commonwealth must prove beyond a reasonable doubt that she did not commit suicide. *Held*, that an exception to a refusal by the judge to rule in terms that the jury might consider such statements as evidence concerning the state of mind of the defendant's wife regarding possible intention to commit suicide which might have affected her subsequent acts, must be overruled.

No exception lies to a refusal by a trial judge to comment on portions of
the testimony at the trial.

There having been evidence at the trial above described warranting a
conviction even if there had been no medical evidence introduced,
it was not error for the trial judge to instruct the jury that they had
a right if they saw fit to disregard the medical evidence in the case and
come to such conclusions as they thought the remaining evidence
warranted.

INDICTMENT in two counts, found and returned on July 16,
1924, charging the defendant with the murder of Eugenie
Mercier on February 13, 1924, the first count alleging that
the defendant "did assault and beat Eugenie Mercier with
intent to murder her, and by such assault and beating did
kill and murder Eugenie Mercier," and the second count
alleging that the defendant, "did assault and beat Eugenie
Mercier, with intent to murder her, by causing her, the said
Eugenie Mercier, to take into her body a deadly poison, as
he well knew, and by such assault and beating did kill and
murder Eugenie Mercier."

Proceedings before the trial are described in the opinion.
The trial was before *Burns*, J., on December 1–18, 1924.

All evidence of the Commonwealth tended to show that
the poison referred to in the second count was a cyanide and,
to show that a cyanide found in the body of the deceased at
an autopsy performed after the body had been embalmed
did not come from an embalming fluid used by an under-
taker, samples of embalming fluid were admitted in evidence,
in circumstances described in the opinion, subject to excep-
tions by the defendant.

Dr. William Boos, a toxicologist referred to in the opinion,
recalled by the Commonwealth in rebuttal, was asked,
respecting a test he made of portions of the stomach of the
murdered woman, "What was the test?" and answered,
"It was the test in which I extracted portions of the
stomach, finely divided with alcohol, and after evaporating
the filtrate, that is, after removing what was left behind and
did not pass into the alcohol by filter, again evaporating
that residue and again extracting with alcohol, and repeat-
ing this extracting until finally I obtained a residue with
which I tested for the presence of cyanide." He then was

asked, "Which cyanide?" and answered, "Sodium cyanide. By Dr. Howard's testimony it would be shown that the alcohol would remove the ferrocyanide from this extract, so that it could not be present, and if I obtained the test for cyanide, it had to be a soluble cyanide or sodium cyanide." The defendant moved "that the answer be stricken out." The judge ruled, "The answer may stand." The defendant excepted.

The witness Frissell, referred to in the opinion, was an optician and optometrist in Pittsfield, who was called by the defendant and testified as to the uses of cyanide of potassium in cleaning and that he kept it in his office and in his home. The defendant asked him, "Where do you keep it in your house," and offered to show that "witness would testify that he keeps the solution of potassium cyanide in a Mason jar in his kitchen, and that his wife used it for the purpose of removing tarnish from silver spoons when they become black by the use of eggs or otherwise." The evidence was excluded subject to exception by the defendant. The defendant contended that his wife, thinking that she was taking medicine, administered to herself cyanide of potassium which he had procured from a nearby plating works to get rid of rust in a key hole of a small iron bank belonging to his children and which he had put in a bottle formerly containing paregoric and had placed in a cupboard in the house where he and his wife and family lived.

Other material evidence is described in the opinion.

The defendant made sixty-eight requests for rulings. Those now material were the following:

"24. The jury may consider the statements alleged to have been made shortly before her death by Eugenie Mercier to Mary Mercier, and if it finds that Eugenie Mercier made such statements, then it may consider such statements as evidence concerning her state of mind regarding possible intention to commit suicide, which may have affected her subsequent acts."

"43. If Louis Mercier made any statements to the police under any form of compulsion while in their custody, then such statements must be disregarded by you and should

be excluded from any consideration by you in this case no matter what the character of the compulsion may have been.

"44. If Louis Mercier made statements to the police under any form of compulsion and such statements have been testified to by the police in this case such statements must now be disregarded by you and not used as evidence against this defendant or given any weight whatsoever.

"45. Any statements made by Louis Mercier to the police while in their custody which were made as a result of any promise or threat must be disregarded by you.

"46. Any statement made by Louis Mercier to the police which was not made voluntarily by him must be disregarded and should not be used as any evidence against this defendant.

"47. It is for you to say whether any of the statements made by Mercier to the police were made as the result of any form of compulsion or threat and if you find such to be the fact, then all such statements must be disregarded by you.

"48. It is for you to say whether any of the statements made by Mercier to the police were made as the result of any form of compulsion or threat and if you find such to be the fact then such statements are not to be regarded by you as any evidence in this case against the defendant."

"58. The fact that the defendant gave false and deceptive explanations of the presence of the bottle containing the cyanide in his house is not to be pressed too urgently. An innocent man, when placed by circumstances in a condition of suspicion and danger, may resort to deception in the hope of avoiding such suspicion."

"60. In view of the difference in conduct, demeanor and display of emotion of men in the face of death or distress, the jury must exercise great care, in drawing any conclusion against Louis Mercier, by reason of his conduct, demeanor, and display of emotion, or lack of it, between the time of the death of his wife, February 13, and his arrest on February 15."

"62. If the jury find that Louis Mercier had perma-

nently broken off relations with the 'young woman' referred to in the testimony, three or four weeks before the death of his wife, then any previous connection or relations that he had with her, should be disregarded in considering whether or not he had any motive for desiring the death of his wife."

The language of the district attorney at the close of his argument, referred to in the opinion, was as follows:

"Mr. Foreman and Gentlemen, there are places on God's good footstool where the law does not control; where order does not exist; where authority is not obeyed. There are places where the law of blood vengeance exists and persists; where it is the duty of the eldest son of the family to take upon himself to avenge the death of any relative or brother that may be foully slain. That is not the law here. That is not the law of this community. That is not the law because we believe in this community in the conscience of our juries. We believe that when we come into a court of justice we can get it. We believe that the jurors and the courts of the Commonwealth of Massachusetts can protect this dead woman that lies out in the cemetery, and can stop by their verdict and their action in this case the commission of similar crimes in the future.

"Mr. Foreman and Gentlemen, it is well that this is so. It is well that this is the attitude and the disposition of our courts and of our jurors. I hope to God it will always be! I hope I have always been a law abiding man. I hope I am today a law abiding man. But, Mr. Foreman and Gentlemen, if my wife or sister lay foully slain, as this woman in this case is, and the Commonwealth of Massachusetts couldn't do anything about it, I am afraid, by Almighty God, I would!"

COUNSEL FOR THE DEFENDANT. "I pray your Honor's judgment."

THE TRIAL JUDGE. "That is proper, Mr. Rosenthal."

COUNSEL FOR THE DEFENDANT. "Your Honor will save my exception."

THE DISTRICT ATTORNEY [continuing to address the jury]. "I am afraid, by Almighty God, I would! We are not here to submit to the law of impulse, to issue licenses to

commit crime, or to forgive them. We are here upon our oaths and upon our consciences to do what the good old Latin words [*vera* and *dictum,* from which the word "verdict" is derived] command us to do. Speak the truth, in the presence of your conscience and in the presence of Almighty God."

A material portion of the charge to the jury was as follows: "There has been offered in evidence a mass of testimony relating to statements and occurrences at the police station on the afternoon and evening following the funeral of Eugenie Mercier. It is a clear, as well as a familiar principle of law that every free and voluntary statement made by a defendant is competent evidence for the consideration of the jury. But if those statements are induced by any promises or threats of any one in authority over a defendant, they are incompetent. The fact that a person is at the police station being questioned by an officer does not render statements incompetent, nor does the fact that one is under arrest. And . . . if one who is under arrest refuses to make any statement when accusations are made against him, that is no evidence against him and should not be taken as such. So if you find that the statements alleged to have been made by the defendant at the station, either before his arrest or after, were voluntarily made, that is, without any promises being held out or any threats made, then you will consider that evidence. But if you find that promises were made, that is, any worldly advantages held out, or if you find that any threats were made, you will exclude from your consideration all statements made by the defendant at the police station thereafter. . . . The ground on which statements made by a party accused under promise of favor or threats are excluded from the jurors' consideration is not because any wrong has been done to the accused in using them, but because he may be induced by the pressure of hope or fear to admit facts unfavorable to him without regard to their truth in order to obtain the promised relief or avoid the threatened danger."

The defendant was found guilty of murder in the second degree and sentence was imposed immediately. The de-

fendant moved for a new trial on the grounds "(1) that the verdict was against the evidence and the weight of the evidence, and the law as given by the court to the jury," and "(2) that the argument of the district attorney in closing for the Commonwealth included improper statements and references prejudicial to the defendant."

The bill of exceptions stated that it was "agreed that the alleged 'improper statements and references prejudicial to the defendant' referred to in the paragraph numbered (2) in the above motion for new trial, are limited solely to (1) the district attorney's statement of his belief in Mr. Stevens' knowledge of the defendant's guilt; (2) the district attorney's use in argument of reference to the letters of the defendant's mother, being exhibits 36, 37, 38, and 39; and (3) to the district attorney's statement at the end of his argument beginning: 'Mr. Foreman and Gentlemen, it is well that this is so' to which exception was saved."

The motion was denied.

The defendant alleged exceptions.

Common Law Rule 24 of the Superior Court (1923) is as follows: "No motion for a postponement, grounded on the want of material testimony, shall be sustained, unless supported by an affidavit, which shall state the name and, if known, the residence, of the witness whose testimony is wanted; the particular testimony which he is expected to give, with the grounds of such expectation; and the endeavors and means that have been used to procure his attendance or deposition; to the end that the court may judge whether due diligence has been used for that purpose. The party objecting to the postponement shall not be permitted to contradict the statement of what the absent witness is expected to testify, but may disprove any other fact stated in such affidavit. No action shall be postponed on such motion if the adverse party will admit that the absent witness would, if present, testify as stated in the affidavit, and will agree that the same shall be received and considered as evidence on the trial, in like manner as if the witness were present and so testified; and such agreement shall be in writing, at the foot of the affidavit, and signed

by the party, or his attorney. The same rule shall apply, *mutatis mutandis*, when the motion is grounded on the want of any material document, paper, or other evidence, that might be used on the trial, provided that this rule shall not prevent the court in any case from granting a postponement, in its discretion, for cause shown."

*J. M. Rosenthal*, (*R. M. Stevens* with him,) for the defendant.

*C. H. Wright*, District Attorney, & *J. M. Shea*, Assistant District Attorney, for the Commonwealth, submitted a brief.

SANDERSON, J. The defendant was charged with the murder of his wife by causing her to take deadly poison, and was convicted of murder in the second degree.

The defendant excepted to the order of the court that a recess of two weeks be taken, based on motion of the district attorney made on the day set for trial, after the list of jurors had been called but before any of them had been examined. The reason for the motion, as stated by the district attorney, was, that he had not been able to obtain the attendance of an officer who was a material witness and who was away on important business. The defendant's ground of exception is that Common Law Rule 24 of the Superior Court (1923) relating to postponement requires an affidavit in support of a motion to postpone a case based upon the absence of a material witness. But it is expressly provided that the rule shall not prevent the court in any case from granting a postponement in its discretion for cause shown. This exception must be overruled.

The defendant excepted to the refusal of the court to order the Commonwealth to specify in response to a motion for particulars the name of the deadly poison relied on as a cause of death. "At the common law, though it was necessary to allege the kind of poison administered, nevertheless proof of the use of a different kind of poison was regarded as an immaterial variance." It is murder if the defendant "unlawfully and feloniously administered any poison with the design of taking life, and that which he so administered did produce death." *Westmoreland* v. *United States*, 155 U. S. 545, 549. An allegation that need not be proved is not an

essential part of the indictment and without a specification of the poison administered the crime is fully, substantially and formally set out.    G. L. c. 277, § 40.    See *Commonwealth v. Morrison,* 16 Gray, 224; *Commonwealth* v. *McCarthy,* 145 Mass. 575, 576; *Commonwealth* v. *Sinclair,* 195 Mass. 100, 106.    The refusal of this part of the motion was discretionary with the court.

The defendant also excepted to the statement by the trial judge to the jury that what they would see on the view would be competent evidence for them to consider.    This was combined with a statement that the view must be conducted in accordance with the oath administered to the officers, under which they were permitted to view the premises, together with any marks or objects thereon or relating thereto which might be pointed out by counsel named in the oath.    No objection was made, so far as appears, to anything which took place on the view.    There was no error in the statement of the judge as to the right of the jury to consider as evidence what was seen by them on the view.    See *McMahon* v. *Lynn & Boston Railroad,* 191 Mass. 295, 298; *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 29.

The ruling of the judge, that the district attorney might in his opening state the substance of conversations with the defendant in the district attorney's presence which would be proved by witnesses to be called, was free from error.

Exceptions were taken to the admission in evidence of two bottles containing embalming fluid obtained from the embalmer.    No exception was saved to the testimony of the chemist as to the analysis of their contents.    The embalmer did not swear positively that the bottles given to the chemist for analysis and their contents were the identical ones used in embalming the body of the deceased; but he did say that the liquid in the bottles was not all used in embalming the body; that the bottles, if not the same, were similar to those containing the fluids used; that they came from the same case of twenty-four bottles labelled and marked exactly the same; that they were bought at one time of one concern, for embalming; that they contained samples of red and white fluid used in embalming and that "It was the same fluid, that

is, the same formula." This was sufficient to justify the admission in evidence of the bottles and their contents. See *Commonwealth* v. *Hobbs*, 140 Mass. 443, 446. The chemist, called later by the defendant testified, in substance that, from his reading and study, all embalming fluids are the same thing.

The defendant has argued exceptions to the exclusion of three questions asked in cross-examination of the witness John L. Sullivan, chief of police of Pittsfield: (1) whether there were some material additions to the testimony as given by him in the District Court; (2) what he had said on the stand that he did not say in the District Court; and (3) whether he testified in the District Court that the defendant told him he had deserted his wife. There is no merit in the contention that the first and second of these questions should have been admitted. It appeared that the stenographer's transcript of the evidence in the District Court was in the hands of counsel for the defendant as he was examining the witness, and the question whether the witness had testified to desertion was asked after a lengthy cross-examination respecting his testimony in the District Court, in the course of which the witness had said that there were many things said to him by the defendant in a conversation lasting several hours which were omitted from his testimony in that court; that many questions were asked by counsel in that court and that he did not then go into details as he had done at the trial. There was no offer to show whether the witness spoke about the defendant's desertion in the other court, although the stenographer was called to testify to what other witnesses said, and there is nothing to show that anything said in that court as to desertion was in any respect different from the testimony of the witness at the trial in the Superior Court. The length and limits of the cross-examination of the witness on this subject were largely in the discretion of the court. See *Squier* v. *Barnes*, 193 Mass. 21, 23. In *Commonwealth* v. *Homer*, 235 Mass. 526, 532, the testimony of the witness before the grand jury was offered in evidence. In *Commonwealth* v. *Perry*, 254 Mass. 520, 526, the question in cross-examination of a wit-

ness whether he had told the grand jury anything about a certain matter to which he testified at the trial was excluded. This court said "Nothing appears to show that any testimony given by him at that time contradicted the testimony which he had given in this trial. The limit of cross-examination was within the discretion of the presiding judge. We cannot say that it was abused, or that the defendant has been prejudiced." See also *Commonwealth* v. *Sacco,* 255 Mass. 369, 439; *Commonwealth* v. *McDermott,* 255 Mass. 575, 580. The defendant's exception to these rulings by the trial judge must be overruled.

There was evidence tending to prove that the defendant worked in a bakery in Pittsfield from October 15, 1923, until December 15, 1923, when he was discharged. Shortly before Christmas he went to Lawrence and remained several days. He stated to the chief of police that at this time he took his wife and family with him, but he later said to the chief that he went alone. There was evidence that on the Friday before Mrs. Mercier died the defendant stated to one of the witnesses in substance that he had one girl in Pittsfield and that when he was in Lawrence there was a woman with whom he was intimate while her husband worked nights. The jury could find that the defendant in this conversation was referring to the time when he was in Lawrence shortly before Christmas, as well as to the time when he was there for several weeks in the spring of 1923. His brother-in-law, who lived in Lawrence, was permitted to testify subject to the defendant's exception that the defendant told him at the time of this Christmas visit that he came after booze, that he made a few cents on it and wanted to make a few cents more; that he wanted to make money in booze. It was in the same conversation that he said that everything was going better; that his folks gave him all his furniture and that he had brought a coat for the witness's sister. We cannot say that the fact, that at this time, when the defendant was out of work and his father and others were supporting or helping to support his wife and children, the defendant, instead of remaining with them or looking for work either at home or elsewhere, went to Lawrence to spend some days on the mis-

sion, as he himself said, of buying liquor to sell, was wholly irrelevant. While standing alone, if it be assumed that the defendant truthfully stated the object of his visit, the evidence might throw little light on his attitude and feelings toward his wife, yet we cannot say that it was entirely without probative value with the other evidence in the case on the issue of motive. Moreover, the real object of his trip to Lawrence may have been to visit the woman there to whom he had referred, and the explanation of his visit made to his wife's brother in connection with his statement of the encouraging conditions at home may have been made to conceal from his wife's family his real purpose in going to Lawrence. The evidence also could be found to have a tendency to disprove his first statement to the chief of police that he took his family to Lawrence with him at the time. In conducting an inquiry to prove that a husband had a motive for killing his wife much must be left to the discretion of the trial judge. It is not necessary that each piece of evidence to be admissible should be sufficient to prove the motive. It is enough if it has some probative value. *Commonwealth* v. *Howard,* 205 Mass. 128. *Commonwealth* v. *Russ,* 232 Mass. 58, 72. If evidence material to prove an issue in the case discloses the defendant's participation in another crime, it does not for that reason become incompetent. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 314. In so far as the evidence tended to prove another crime the defendant's rights were protected by the part of the charge in which the trial judge said that the fact that a person has committed a crime is not evidence that he has committed any other crime. The exceptions to the admission of this testimony of the defendant's brother-in-law are overruled.

The defendant excepted to the evidence that saws, such as might be used in cutting prison bars, were found sewed into his trousers when a search of his prison cell was made. It is contended that such evidence ought not to be admitted in the absence of evidence of an attempt to use the saws. The defendant's own statement, that he received the saws while in prison and sewed them into his clothing fearing that if they were found people might think he was trying to escape,

made this evidence competent as tending to show consciousness of guilt. See *Commonwealth* v. *Wallace*, 123 Mass. 400; *Commonwealth* v. *Madeiros, supra.* It was for the jury to say from the whole evidence whether they would believe the defendant's explanation of the manner in which the saws came into his possession and his purpose in continuing to keep them, or whether they would find that he had the saws to use in effecting an escape if opportunity presented itself. The competency of the evidence does not depend upon proof of an overt act such as would be required to prove the crime of attempting to escape. The exceptions to the admission of this evidence, to the reference to the saws made by the district attorney in his opening and by the judge in his charge, are overruled.

After the defendant in cross-examination had directed the attention of the witnesses Dr. Boos, a toxicologist, and Mrs. Sacco to answers made by them in the District Court, it was proper for the trial judge to allow the district attorney in rebuttal to put in all that the witnesses said in the District Court on the subject to which the defendant's questions were directed and to clear up any erroneous impression which might be made on the jury by the questions or the form in which they were phrased. In so far as any material testimony was then introduced by the district attorney's questions, it was within the judge's discretion to admit such evidence at that time. See *Commonwealth* v. *Williams*, 244 Mass. 515, 521.

Exceptions to questions of the district attorney on the ground that they were leading must be overruled.

Two questions to the chemical expert, to which objection was made on the further ground that they involved disputed questions of fact, were: "Have you any question that the poison that killed this woman was cyanide of potassium?" and "Is there any question in your mind but that hydrocyanic acid was the cause of her death, in this case?"

It is apparent from the whole examination of the witness that he was intending to testify to the cause of death of the person whose stomach he examined and that he did not intend to give testimony to the effect that the stomach which

he examined was that of the woman for whose death the defendant was being tried, and it does not seem likely that the jury could have understood the questions and answers in any other sense.    But if it be assumed that there is ground for the contention that, on the evidence the question whether the witness examined the stomach of the defendant's wife was in dispute, and if it be assumed that the two questions asked were objectionable in form, all ground for the objection was cured by the question asked of the witness by the defendant in recross-examination in answer to which the doctor said, in substance, that the way he wanted to leave the matter was that, assuming that the stomach examined by him came from the body of Eugenie Mercier, then in his opinion she died from the effect of a cyanide and hydrocyanic acid.

The defendant excepted to the refusal by the trial judge to strike out certain answers and parts of answers as irresponsive.

In cross-examination of the medical examiner, the defendant's counsel asked: "So far as the story was given to you of this woman's death on Wednesday, February 13, it might have been a case of apoplexy?" and the witness answered: "It might, but I don't believe it was." The defendant's motion to strike out the last part of the answer was denied. The witness had testified in direct examination that in his opinion death was caused by some poison in the stomach; and, in cross-examination, that apoplexy is a cause of sudden death; and he had described the nature and symptoms of apoplexy. After the defendant had saved this exception, the witness in response to questions by the defendant's counsel gave his reasons for believing that apoplexy was not the cause of death. He also gave further reasons for this opinion in redirect examination. The first question asked called for the opinion of a medical witness, and it may well be that a part of the answer would not fairly state his opinion in answer to the question. The ruling refusing to strike out part of the answer was one which might rightly have been made in the discretion of the trial judge. The fact testified to in the answer was a competent fact to be proved and in a broad sense the answer was responsive.

The motion to strike out the answer of Dr. Boos to the question "Which cyanide?" was properly denied. The whole answer could not have been struck out. It was in part directly responsive to the question. If the defendant intended to object to a part of the answer he should have designated the part.

The same witness, having testified in cross-examination that his reason for testing a certain embalming fluid for cyanide was because some of it would touch the outside wall of the stomach, was asked by the defendant's counsel: "Might some of the results of the fluid touching the outside of the stomach wall produce a positive test for cyanide?" His answer was "Yes, and there was none present." The motion to strike out the "latter part," of the answer was denied. The presiding judge may have thought that the whole answer was permissible to prevent a misunderstanding of the opinion of the witness. The part of the answer objected to was a competent fact and in the nature of a repetition of what the witness had previously testified to, and we cannot say that it was an abuse of discretion for the trial judge to allow the whole answer to stand.

Exceptions were also taken to questions asked in cross-examination of the defendant.

The first of these was to the question, whether at one of the dances at the Casino any officer told him he had better stop dancing and go home and take care of his wife and children, and he answered he didn't remember such a thing. In reply to a question relating to his acquaintance with the police, he stated that he knew some of them but there was nothing wrong. When asked if a police officer helped him on the corner of the street one evening when a crowd was chasing him, he said he guessed he did, that he did not know what the crowd were chasing him for; and to the question whether he had been chasing a woman there and the mob got after him, he said "No." Before any of these questions were asked, the defendant had testified without objection that he had never had any trouble with the police. "In the practical administration of justice, the presiding judge, especially in a criminal case, must be given a broad discretion as to the ex-

tent and scope of legitimate cross-examination." *Commonwealth* v. *Kaplan,* 238 Mass. 250, 255. *Commonwealth* v. *Sacco, supra.* "Where the inquiry relates to the relations between husband and wife the details may be somewhat minute. Standing alone, single incidents of slight significance may in connection with all the others have a bearing upon the existence of a feeling of hostility or other elements of motive." *Commonwealth* v. *Russ, supra. Commonwealth* v. *Howard, supra,* pages 148, 149.

In so far as the witness made denials of the matters asked about, there was no evidence against him. See *Commonwealth* v. *Devereaux,* 256 Mass. 387, 396. In so far as the questions were framed to test the accuracy of his previous testimony, there is no valid objection to them. In so far as they sought to show that he was neglectful of his wife or indifferent toward her and that he was attentive to other women, and in so far as they tended to contradict his testimony, they were admissible in the discretion of the trial judge.

The exception to the question, "To whom except Officer Bligh, since your arrest, have you ever stated that you told your wife about this poison in the house?" must be overruled. The defendant answered that he had told his counsel and his father and mother. If he had answered that he had told no one since his arrest, he would have been entitled to a ruling that his failure to make a statement when under arrest could not be considered against him. *Commonwealth* v. *Goldberg,* 212 Mass. 88, 91. It does not appear that any request for a ruling on this matter was made. The defendant cannot complain of the introduction by the Commonwealth of evidence favorable to himself.

The ruling excluding evidence of the witness Frissell, that he kept cyanide of potassium in a closet in his house, was right.

When the defendant's mother was called to testify, it had appeared that both of the defendant's parents were living in Pittsfield during the years that the defendant and his wife had lived there. The defendant had introduced evidence tending to show that the relations between himself and wife had

been cordial during their married life. It had appeared that the defendant had left his wife and family in Pittsfield in April, 1923, and gone to Lawrence; that in June, 1923, his wife and four small children came to Lawrence and his wife went to work in a mill; that within a few days of her arrival he left Lawrence, and, with the possible exception of one visit, he did not see his family again until after they returned to Pittsfield in September, 1923; that in the meantime he had been in Springfield, Pittsfield, and Rochester, New York, where he was when he heard that his wife was back in Pittsfield. The defendant testified that when he was in Rochester his wife and folks knew where he was. It was the contention of the Commonwealth that the defendant had been neglecting his wife and children; that he deserted them when he went to Lawrence and also when he left them after they arrived in Lawrence; and that he desired to be rid of his wife and of the responsibility for the care of her and the children. It had appeared in evidence that during the year 1923, he had been criminally intimate with a woman in Pittsfield for whom he had bought clothing and a ring. He fixed the date when the ring was purchased as about six months before his wife's death, or about August, 1923, and it could have been found that he had promised to marry the woman if she got into trouble. There was also the evidence of his relations with a married woman in Lawrence. The defendant's purpose in leaving his family in Pittsfield and going to Lawrence and again leaving them in Lawrence came to be a material inquiry and as incidental to this all the circumstances under which he left came to be material. The defendant's mother testified in direct examination to seeing the defendant's family daily during most of the time when they were living in Pittsfield; that her son went to Lawrence to work and live there; that his wife always wanted him to go to Lawrence where her brother Philip and her parents were; that he was away from Pittsfield at that time about three weeks or a month; that he came back to Pittsfield to work after his wife had gone to Lawrence; that then he went to Rochester and she knew he was going. She also described in some detail that the defendant's wife at the time of her

death had a considerable amount of clothing and that up to a month before her death she was cheerful. She testified without objection, in cross-examination, that while her daughter-in-law was in Lawrence there was no time when she did not know where her son was; that there was no time when he left his wife or her that the witness did not know where he was.

In this state of the evidence we cannot say that the trial judge went beyond the limits of judicial discretion in admitting the letters written by the witness, under his ruling that they were not evidence of any facts stated in them, but were admitted solely as bearing upon the credibility of the witness. These letters were all written by the witness, one, dated May 10, to her son when he was in Lawrence, and three, dated respectively August 28, September 4, and September 10, to her son's wife while she was with her children in Lawrence. If it be assumed that the letters contradicted the witness on collateral matters, still the extent to which a witness may be contradicted on such matters is largely in the discretion of the trial court. *Bennett* v. *Susser*, 191 Mass. 329, 330. *Commonwealth* v. *Russ, supra*, pages 80, 81.

But some of the matters concerning which the letters tended to contradict the witness were not wholly collateral. The defendant had testified that he had written his mother asking her not to have his wife and children come to Lawrence, and if his mother's letter is read in the light of that fact it could be found that notwithstanding the son's opposition she was insisting on the wife and children going to Lawrence to join the husband and father. This letter tended to weaken the impression left by the testimony of the witness that her son went to Lawrence to work and to live in order to carry out the wishes of his wife. The letter of August 28 contradicted the witness by reason of its tendency to prove that although the defendant went away from her house, he went in the night and she did not know where he had gone; and the letter of September 4 was admissible for its tendency to show that she did not then know where her son was. The letter of September 10 shows that the witness did not then know where the defendant was and the jury

could have found that he went at about this time to Rochester, and that the letter had a tendency to contradict her testimony that she knew when he went to Rochester. As at least a part of each letter was competent, the ruling admitting them must stand. The objection was made to the letters as a whole, and there was no request to exclude a portion of them. The motion made to strike out the letters of August 28 and September 4, when the defendant's former employer testified in rebuttal that the defendant was working in a bakery in Pittsfield on those two dates, was properly denied. The testimony of the defendant as to his relations with a woman in Pittsfield and to giving her a ring at a time which could be found to be about August, 1923, suggests that he might have had a reason for not letting his mother know where he was at about the time when some of these letters were written even if he were in Pittsfield; and it is also possible that the jury may not have believed the evidence that he was then working in that city.

The witness' testimony that when the defendant left his wife and children in Lawrence he said he brought liquor from Lawrence to sell, and that she knew that he then brought liquor from Lawrence, would be irrelevant except for its tendency to throw light on the defendant's relations to his wife and the circumstances connected with his leaving her in Lawrence. For the reason stated in considering similar testimony from another witness, we cannot say that the trial judge in admitting the evidence went beyond the limits of judicial discretion. All exceptions to the evidence of Mrs. Mercier must be overruled.

The question, whether certain evidence offered in rebuttal should have been introduced before the defence opened, was a matter largely in the discretion of the trial judge, and we cannot say that there was an abuse of discretion in any of the rulings admitting such evidence.

The officer to whom the mittimus for the defendant was issued, instead of taking him directly to the jail, took him to different places where certain evidence was obtained which was used at the trial. The defendant objected to all evidence obtained in this way. But if it be assumed that the

officer had no right under his mittimus to take the defendant to these places, still evidence thus obtained if otherwise admissible was competent. *Commonwealth* v. *Welch,* 163 Mass. 372. *Commonwealth* v. *Wilkins,* 243 Mass. 356, 361.

The motions for a directed verdict were properly denied. There was sufficient evidence to justify the jury in finding that the defendant intended to cause the death of his wife by poison which he had procured and that her death was thus caused by him. The evidence presented purely an issue of fact for the jury and the case was left to them under instructions which protected the defendant's rights.

The district attorney in his closing argument referred to a part of the argument of counsel for the defendant as insincere and false, stating that it was "false because this man is guilty, and because I believe that that man that addressed you knows it as well as I do." This part of the district attorney's address went beyond the bounds of legitimate argument. But the judge at once, upon objection being made, said: "No, I don't think that's proper, Mr. Wright." The court adjourned before the argument of the district attorney closed. The defendant at the opening of court the next day moved that a mistrial be declared because of the improper and prejudicial statement concerning counsel for the defendant, referring to the part of his argument quoted above. Mr. Wright then said that he had intended to withdraw that statement. The judge denied the defendant's motion subject to the defendant's exception. Mr. Wright then stated to the jury that he withdrew the statement that he made the night before with reference to Mr. Stevens, and what may or may not be his belief in this case; that he did it because his client, the Commonwealth, desires that in this or any other trial any man concerned with it shall be treated with complete and exact justice; and that applies to counsel as well as to the defendant. "He may believe — he has a right to as his counsel — the lying stories this defendant has told him." The judge then said: "I don't think that is proper, Mr. Wright, what Mr. Stevens may believe one way or the other." The defendant renewed his motion for a mistrial, which was again denied subject to the defendant's exception. The

district attorney then said that he was not there to make any argument on what the mental attitude of counsel may or may not be toward the case.    We are of opinion that in view of all that was said the rights of the defendant were not prejudiced by the unjustifiable reference to the belief of counsel in his guilt, but that they were safeguarded by the withdrawal of the remarks and the rulings of the trial judge. See *Commonwealth* v. *Dies*, 248 Mass. 482, 487.

The defendant also excepted to an uncompleted sentence of the district attorney's argument in which he started to base an argument upon the contents of the letters of the defendant's mother as though they were in the case for a broader purpose than merely to affect the credibility of the witness.    When counsel objected the district attorney said he withdrew it, and when the judge was asked to rule he said "It is withdrawn.    What more can you do?"    This exception must be overruled.

Counsel for the defendant also objected to the language used by the district attorney, as he was closing his argument, but we are of opinion that taken in its entirety this part of his address was an argument for obedience to law and for the settlement of issues in court by true verdicts of juries and that it was within the limits of what is permissible in argument.    The defendant did not point out to the trial court any specific objections to this part of the argument and did not ask to have the jury instructed in regard to it. See *Commonwealth* v. *Cabot*, 241 Mass. 131, 151.

Most of the requests for rulings have been disposed of by what has been said.    The trial judge, having admitted evidence of statements by the defendant's wife which might be interpreted to mean that she intended to commit suicide and having ruled that the Commonwealth must prove beyond a reasonable doubt that she did not commit suicide was not obliged to give in terms the instruction requested concerning those statements.

The requests concerning the defendant's conversations with the police were sufficiently covered by the charge.

The requests relating to the defendant's false and deceptive explanations of the presence in the house of the bottle

containing cyanide, and to the difference in the conduct of men when facing death or distress, present no question of law. The matters therein referred to were wholly for the jury.

The request that if the relations between the defendant and the woman in Pittsfield had been permanently broken off three or four weeks before his wife's death, then their previous relationship should be disregarded on the question of motive, was properly denied. The judge was not required to comment on this portion of the evidence, and it might well be that although the relationship had been ended under the circumstances disclosed by the evidence, the defendant might hope to renew it when his wife could no longer interfere with a marriage. The judge fully instructed the jury to disregard the evidence concerning this woman except in so far as it might or might not have a bearing on motive.

The judge instructed the jury, subject to the defendant's exception, that they had a right if they saw fit to disregard the medical evidence in the case and come to such conclusions as they thought the remaining evidence warranted. It seems unnecessary to give extended consideration to this issue in a case where there was considerable medical testimony, much of which related to matters apparently not seriously disputed, but if this part of the instruction should be construed to mean that the judge ruled in effect that evidence outside the medical evidence would justify the jury in reaching a verdict of guilty, there was no error. If there had been no medical evidence in the case the jury could have found all of the essential elements of the offence established by the other evidence.

The exception to the order denying the motion for a new trial must be overruled. This was a matter within the discretion of the court.

All questions argued have been considered.

*Exceptions overruled.*