## JAMES B. POND *vs.* ISABEL S. POND.

Suffolk. January 10. — 31, 1882. LORD, FIELD & C. ALLEN, JJ., absent.

At the trial of a libel for divorce, the mother of the libellee was a material witness in her favor. *Held*, that the libellant had no ground of exception to the exclusion of evidence that the husband of the mother had previously obtained a divorce from her, and that her daughter was a witness in her behalf.

At the trial of a libel for divorce, on the ground of adultery by the wife with a certain person, in whose company she went to a hotel, evidence is inadmissible that the person asked the clerk of the hotel for "connecting rooms," in the absence of evidence that they went to the hotel for the purpose of committing adultery, if such request was not made in her hearing.

At the trial of a libel for divorce, on the ground of adultery by the wife with G., in whose company she went to a hotel, the libellant offered evidence tending to

show that the libellee and G. were assigned to connecting rooms in the hotel. *Held*, that evidence that the door between the rooms was generally kept unlocked was inadmissible on the issue whether the door was unlocked on the night in question, in the absence of evidence that it was uniformly so kept.

At the trial of a libel for divorce, on the ground of adultery by the wife with G., she testified in her own behalf, but G. was not a witness. It appeared that she had filed interrogatories, and taken out a commission to take G.'s evidence, but the commission had not been returned. Her counsel asked her, "Have you any knowledge or information of G.'s whereabouts;" to which she answered, "I have heard that he has gone to Europe." *Held*, that the libellant had no ground of exception.

LIBEL for divorce, alleging that the libellee committed adultery at Providence, Rhode Island, on September 1, 1880, with one Jones, and at White River Junction, Vermont, on November 1, 1880, with one Goddard. Trial in this court before *Field*, J., who allowed a bill of exceptions, in substance as follows:

On the question whether the libellee committed adultery with Jones, Mrs. Phippen, the libellee's mother, was a material witness in her favor. On cross-examination of the mother, she was asked whether her former husband, Marshall S. Stone, had not obtained a divorce from her for adultery, and whether the libellee was a witness for her in the trial of such case. The judge, upon objection of the libellee, excluded these questions. The libellant then offered in evidence the record of this court in a libel for divorce of Marshall S. Stone, at March term 1858, against the witness, for the purpose of showing the facts referred to in the first question. The judge excluded the record.

In support of the second charge in the libel, the libellant offered evidence tending to prove that the libellee was at Montpelier, Vermont, on November 1, 1880, as a member of a company which had been giving concerts for several weeks; that on that day she suddenly left the company, which was engaged to give a concert at Rutland that evening, and in the evening took a train for Boston, by way of White River Junction, in company with Goddard; that they left the train at White River Junction at about two o'clock A. M., and went to a hotel and occupied connecting rooms. The libellant offered in evidence the night clerk at the hotel, who assigned the parties to their rooms, and who testified that Goddard and the libellee came into the hotel together, and that the latter stood at the foot of the staircase about ten or fifteen feet from the counter where Goddard registered

both of their names. The libellant asked the following question: "Did either Mr. Goddard or Mrs. Pond, if so, which one, say anything to you about what rooms they wanted? If so, state what was said." The answer was, "Yes, sir; Mr. Goddard called for connecting rooms." To the admission of this question and answer the libellee objected in general, and on the ground that she was not within hearing of this conversation. The judge ruled that anything said by the libellee herself, or said in her presence or hearing, or afterwards communicated to her, was admissible; but found as a fact, upon this evidence, that she was not within hearing of the conversation, and excluded the testimony, against the exception of the libellant.

The libellant also asked the witness the question, "Was the door between the two rooms locked or unlocked when you went into them that night?" To which the witness answered, "It was generally kept unlocked." The judge ruled that, upon the question whether the door was unlocked on the night inquired of, proof that it was generally kept unlocked was not material, unless it was shown that it was uniformly so kept, and excluded the answer. The night clerk did not remember whether the door was locked or unlocked when he entered the rooms that night, and did not remember whether he looked to see. He also testified that he first conducted Goddard to room No. 1, leaving the libellee in the hall, and afterwards conducted her to room No. 2. The chambermaid of the hotel testified that, early in the morning, after Goddard had left the house, she found the libellee in bed in room No. 1. The libellee denied that she occupied the room with Goddard, or that she committed adultery. She testified that she was conducted to the first room they reached, and shown into it before Goddard was assigned any room; that she had no knowledge as to what room was assigned to Goddard; that she occupied the room to which she was assigned, and did not leave it after she was assigned to it; and that the room in which she was seen by the chambermaid was the one to which she was originally assigned.

During the direct testimony of the libellee, she testified that she had not seen Goddard since that night but once, and that was in New York, when she met him in the street. Her counsel then asked her, "Have you any knowledge or information of

Mr. Goddard's whereabouts?" The libellant objected to so much of the question as called for anything except the witness's personal knowledge, but the judge permitted the question to be put, and the witness answered, "I have heard that he has gone to Europe." The libellant excepted to the allowance of the part of the question above referred to, and to the answer. Goddard was not a witness on the trial. The libellee had filed interrogatories and taken out a commission to take Goddard's evidence, but the commission had never been returned.

The judge directed a decree to be entered dismissing the libel; and the libellant alleged exceptions.

*R. M. Morse, Jr. & H. L. Harding*, for the libellant.

*S. Lincoln*, (*T. F. Nutter* with him,) for the libellee.

DEVENS, J. The exceptions to the rulings in this case upon the admission of evidence cannot be sustained.

1. Mrs. Phippen, the mother of the libellee, was called by her, and was a material witness. It is conceded that the record in the divorce suit in which Mrs. Phippen had been a party, which was offered by the libellant, was not admissible. *Commonwealth* v. *Stevenson*, 127 Mass. 446. But it is argued that, in order to discredit her and show a bias, it was competent to inquire of her whether in that suit the libellee had not been a witness on her behalf. It is ordinarily within the discretion of the presiding judge to determine to what extent the witness shall be cross-examined on facts otherwise immaterial, for the purpose of showing bias or want of credibility. *Commonwealth* v. *Lyden*, 113 Mass. 452, and cases cited. It was not illegally exercised in refusing to permit an inquiry, which, if answered in the affirmative, could have afforded only a very remote ground, if any, for attacking the credibility of the witness.

2. The statement of the witness Goodrich as to what was said by Goddard, her alleged paramour, not in the presence or hearing of the libellee, was correctly excluded. It was not a part of any act done by him, by which she could be affected without knowledge of or participation in it, and was not admissible as a part of the *res gestæ* as tending to qualify it. Indeed, the act done consisted in the declaration itself, as it was a request by him that the libellee and himself should have connecting rooms.

If it were proved that the parties had gone to the house for an improper purpose mutually agreed to, the evidence of what was said or done by one with the object of carrying out that purpose might be admissible, as it could be fairly inferred that it was said or done with the authority of the other. But it is impossible to infer such a purpose, and thus such authority from the other party, by the act of one, independently of such proof. *Burke* v. *Miller*, 7 Cush. 547. Nor can such acts or declarations be said to supply any deficiencies in the evidence of such a purpose. An agency cannot be proved against the principal by the declarations of the alleged agent. *Haney* v. *Donnelly*, 12 Gray, 361. *Baker* v. *Gerrish*, 14 Allen, 201. Had this evidence been received as the case stood, it would have been received upon the inquiry whether the parties had resorted to the house for an improper purpose, for which, as against the libellee, it was manifestly incompetent.

But the libellant presses most strongly the argument that it was competent to show the adulterous intent of Goddard, independently of the question whether the same evidence showed also that it was participated in by the libellee. That, in an indictment for adultery, or in proceedings similar to the one before us, evidence is admissible of improper familiarities other than those alleged between the parties, is settled. *Commonwealth* v. *Merriam*, 14 Pick. 518. *Thayer* v. *Thayer*, 101 Mass. 111. So evidence is admissible of declarations of one party made in the presence of the other which have the same tendency. *Commonwealth* v. *Pitsinger*, 110 Mass. 101. But such acts or declarations are admissible on account of the participation of the party therein, or presumable assent thereto. To allow one to be affected by proof of the adulterous disposition of another, might expose an innocent party to evidence which would be most dangerous in a trial, while it is conceded that, as affecting such party, it would be entirely immaterial, unless participation in it were proved. We are referred to no case in which such evidence has been received as a detached and independent fact, and we are not disposed to lead the way in the direction of its admission.

Declarations or confessions of one party are inadmissible to affect the other, when not made in his presence nor communicated

to him. *Croft* v. *Croft*, 3 Hagg. Eccl. 310, 318. *Lawson* v. *State*, 20 Ala. 65. For the same reasons, evidence of an adulterous disposition of one party should be excluded, unless it be directly connected with the conduct of the party sought to be charged with the offence.

3. The witness denied any recollection as to whether the door between the connecting rooms was or was not locked on the night in question. The libellant then offered evidence that the door was generally unlocked. This was rightly rejected. There was no offer of evidence of a uniform custom, and the mere fact that it was more generally unlocked than locked ought not to be admitted to affect the libellee upon the inquiry whether it was actually unlocked on the night in question.

4. The libellee testified, but Goddard was not produced as a witness. Interrogatories had been filed, a commission taken out, which had not been returned, and an apparent attempt had been made to take his testimony. His evidence would either directly confirm or contradict hers, and a failure on the part of the libellee to produce his testimony, if she could procure it, would afford just ground for distrusting her own. It was competent for her to show that she neither knew where he was, nor could she obtain any information that he was where she could obtain his testimony. The statement that she had heard he was in Europe was not received as evidence that he was actually there, but only as tending to show that she had sought to find him, — that so far as she was informed he was out of the United States. Its only value was in relation to her good faith in having honestly endeavored to obtain his evidence.

*Exceptions overruled.*