COMMONWEALTH *vs.* CHARLES A. DOMINICO & others.

Suffolk.   May 25, 1973. — January 31, 1974.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Practice, Criminal,* Disclosure of evidence, Judicial discretion, Speedy trial, Trial of defendants together, Selection of jury, Continuance, Assistance of counsel, View, Disclosure of evidence before grand jury, Mistrial, Charge to jury. *Evidence,* Testimony of accomplice, On cross-examination, Credibility of witness, Judicial discretion, Of bias, Acts and declarations of conspirator. *Constitutional Law,* Assistance of counsel, Speedy trial, Confrontation of witnesses, Fair trial, Due process of law. *Identification.  Jury and Jurors.  Witness,* Credibility, Accomplice.

The disposition of motions by a defendant in a criminal case for inspection of the "criminal records" and police records of prospective witnesses for the Commonwealth and relevant police reports was within the discretion of the judge hearing the motions. [699-700]

A delay of nineteen months between indictment and trial did not deny to defendants in a criminal case their constitutional right to a speedy

trial where it appeared that the case involved a joint enterprise in armed robbery with multiple defendants, that a substantial part of the delay was due to the defendants or their attorneys, that by reason of bail the defendants did not suffer prolonged incarceration, and that they were not prejudiced by loss of memory of prosecution witnesses, and it did not appear that such delay as was attributable to the prosecution was an attempt to hamper the defense or that one of the defendants was prejudiced by the death shortly before trial of an asserted alibi witness. [700-703]

Denial of motions for severance in an armed robbery case involving multiple defendants did not deny them their constitutional right to an impartial jury, or show an abuse of discretion, by reason of the procedure permitted by G. L. c. 234, § 29, of allowing the prosecution as many peremptory challenges "as equal the whole number to which all the defendants . . . are entitled," or by reason of conflicting use of peremptory challenges by the various counsel for the defendants. [704-705]

Denial of a motion for a continuance by a defendant in an armed robbery case for whom counsel was appointed about a month before trial was not shown to have resulted in depriving the defendant of his constitutional right to effective assistance of counsel or to have been an abuse of discretion. [705-706]

No abuse of discretion was shown in a criminal case in excusing veniremen in the absence of the defendants and their counsel and refusing to give counsel information concerning such veniremen. [706]

In a prosecution for armed robbery of an armored truck carrying cash and checks collected from one of the stores of a company, no error was shown in the circumstances in not excusing for cause a prospective juror who was employed in another store of the company. [707-708]

No abuse of discretion was shown by holding a view during the day in a prosecution for armed robbery of an armored truck perpetrated on a dark, rainy night. [708-709]

No abuse of discretion was shown in a criminal case in refusing requests for inspection of the grand jury minutes where the judge based his refusals on his reading of the minutes. [709-710]

There was no error in a criminal case in denial of a motion by a defendant for a mistrial grounded on a mistrial declared as to a co-defendant whose testimony, it was asserted, would have been helpful to the moving defendant where it was not shown that the co-defendant would have taken the stand had his trial continued. [710-711]

At the trial of an indictment for armed robbery of an armored truck containing large sums of cash and checks, there was no error in denial of a motion for a mistrial by one of the defendants grounded on a question by the prosecutor as to that defendant's bail in a large

Commonwealth *v.* Dominico.

amount where the question was excluded and the judge immediately gave a curative instruction to the jury to disregard it. [711]

In a criminal case in which two of the defendants had pleaded guilty and become principal witnesses for the Commonwealth, there was no violation of other defendants' constitutional rights of confrontation and fair trial, or error or abuse of discretion, in excluding questions to one of such witnesses on cross-examination to show that he was a professional criminal and his activities as such and in ruling that impeachment of him for such activities could be shown only by introduction of records of convictions of him, or in ruling that further questions as to such activities must be submitted to judicial scrutiny in the absence of the jury, or in the judge's determination of the extent of cross-examination of such witnesses as to promises of favorable treatment of them and other matters designed to show bias on their part. [712-716]

Allowance of a pre-trial motion in a criminal case for inspection by defense counsel of tangible evidence intended to be relied upon at trial by the Commonwealth did not amount to a stipulation that any such evidence not previously inspected by defense counsel would not be used at trial, and no prejudice to a defendant or error was shown in admission in evidence of certain items of tangible evidence which he claimed he had not had an opportunity to inspect. [716]

At the trial of an indictment for armed robbery against several defendants, there was no error in the admission of evidence of statements made out of court by one of the defendants against all of the defendants upon a representation by the prosecutor that a joint enterprise in armed robbery would be proved, where the judge made the admission of such evidence subject to motions by the defendants to strike at the close of the evidence and later instructed the jury as to the use of such statements once a joint enterprise had been established [717-718]; nor was there error on redirect examination of a prosecution witness in seeking to clarify testimony by him on cross-examination as to an issue then raised by a defendant [718]; nor was there error in admitting in evidence, without a voir dire, an in-court identification of a defendant by another defendant who had pleaded guilty and become a principal prosecution witness and who testified that he had known the identified defendant for several years [718-719]; nor was there error in not excluding questions to a prosecution witness, claimed by the defendants to be vague and indefinite and calling for conclusory answers, as to the planning of the robbery and the roles of the defendants in it [719]; nor, in view of extensive cross-examination of a principal prosecution witness showing his background, character and criminal convictions, was there error in a refusal by the judge to allow cross-examination of the witness as to his use of certain aliases [719].

At the trial of an indictment for armed robbery against several defendants, two of whom had pleaded guilty and become principal prosecution witnesses, there was no error in a portion of the charge suggesting that the jury give the testimony of such two witnesses "close scrutiny, but no closer scrutiny than any other witness" [720-721]; or in a portion of the charge relating to promises of leniency to such two witnesses [720]; or in a portion of the charge relating to the ownership of the stolen property [721-722].

No denial of due process of law to a defendant through alleged delay in the appellate process appeared in a case involving a joint enterprise in armed robbery with multiple defendants where an appeal by such defendant was not entered in this court until two years after the appeal was claimed in the Superior Court, the case was argued about three months after entry, and the decision of this court was rendered about eight months after the argument. [722-723]

INDICTMENT found and returned in the Superior Court on June 9, 1969.

The case was tried before *Roy,* J.

*Robert M. Mardirosian* for the defendant Novello.

*Usher A. Moren* for the defendant Dominico.

*Malvine Nathanson (Thomas J. Herbert* with her) for the defendant Merlino.

*James F. Sullivan,* Special Assistant District Attorney (*Alfred E. Saggese, Jr.,* Assistant District Attorney, & *Elizabeth C. Casey,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

ARMSTRONG, J.   The appellants in this case, Charles Dominico, Carmello Merlino and Rocco Novello, bring their appeals under G. L. c. 278, §§ 33A-33G. They were convicted of armed robbery. A fourth defendant at the trial, William Cresta, was found not guilty by the jury. There were five other men named in the indictment: two remained unapprehended at the time of the trial; a mistrial was declared as to one Santo Diaferio; and both Andrew DeLeary and John J. Kelley pleaded guilty prior to the trial and appeared as key witnesses for the Commonwealth. The charges arose out of the armed robbery of a Brink's armored truck in Boston on December 28, 1968.

The jury heard testimony that on Saturday, December 28, 1968, Brink's truck No. 6280 made pickups totaling

$542,802.48 in cash and $526,147.96 in checks from various business establishments in Boston. Between 6:00 P.M. and 7:00 P.M. that day the Brink's driver, John Gillespie, double parked the truck on Canal Street in Boston opposite the Union Oyster House, leaving the motor running. Gillespie and the guard, Joseph Kelley, left the truck and entered the Downey & Judge tavern for a drink. The messenger, Richard Haines, remained in the truck, leaving the dead-bolt on the driver's side disengaged. At the time it was dark and raining.

Suddenly the door of the driver's side opened. A masked man entered, pointed a gun at Haines and said, "Don't move or I'll blow your head off." The masked man swiftly pulled Haines' hat over his eyes, blocking his vision, and handcuffed him but assured him that he would not be hurt. A second man entered the cab and the truck was driven to an empty parking lot across the street from the Registry of Motor Vehicles, where it was unloaded. Haines was ordered out of the cab into the back of the truck, where he was handcuffed to the door. When the group had left, Haines knocked his hat off, enabling him to observe a station wagon pulling away. Haines eventually freed himself and went to a nearby Metropolitan District Commission police station, where he reported the robbery.

Preparation for the robbery had begun the prior year. John J. Kelley had been keeping truck No. 6280 under observation. He mentioned to Merlino and Diaferio that it might be feasible to rob the truck. Subsequently there were further discussions with regard to the robbery in which Kelley, Merlino and Diaferio were joined by the defendants Dominico and Novello, and by the two others named in the indictment but not apprehended. Most of these discussions took place in the Back Bay area of Boston.

During the same period, Kelley, with the help of Dominico, arranged a meeting with Andrew DeLeary, a Brink's employee. On several occasions during the summer of 1968, these men discussed the possibility of robbing a Brink's truck. Kelley described the Saturday route in which he was interested to DeLeary. DeLeary was familiar with the truck

assigned to that route because he worked on it on Mondays. By pre-arrangement, DeLeary passed keys to that truck to Dominico during a break in the route and received them back from him after copies had been made. After testing these copies DeLeary marked one of the keys with an "F" to identify it as the front door key. This key was left behind by the robbers in the front door of the truck.

After the keys had been made Kelley, Dominico, Novello, Merlino, Diaferio, Stephen Roukous and Philip Cresta met to discuss the best location for the robbery. Kelley reconnoitered the North Station area and chose Canal Street as the location for the robbery because the Brink's driver and guard were known to frequent a tavern in that vicinity. License plates and cars were stolen for use in the robbery. Kelley purchased ski masks, disguises, handguns and a carbine. Holes were drilled in the trunk of one of the cars so that a man lying in the trunk could observe the armored truck undetected.

In November of 1968, after these preparations were completed, those named in the indictment, with the exception of William Cresta, met to plan each individual's role in the robbery. Novello was to be the observer in the trunk. Merlino was to drive one of the stolen cars, which was to follow behind the truck after it had been taken over. Dominico was to open the truck door, help subdue the guard and drive away with the truck.

The robbery was planned successively for several Saturdays in November and December but for various reasons was called off each time. The group met once again on Friday evening, December 27, 1968, near a Back Bay bar and rescheduled the robbery for the following day. Four cars and the necessary equipment for the robbery were assembled that evening. On Saturday afternoon the group met underneath the Southeast Expressway near the entrance to the Sumner and Callahan tunnels. From there they observed the Brink's truck go through the tunnel to East Boston. When it returned to the Boston side thirty to forty-five minutes later, they followed it in their stolen cars onto the expressway and down onto Canal Street.

The robbery of Brink's truck No. 6280 was carried out as planned. The robbers, after leaving the parking lot on Nashua Street, dispersed to various pre-arranged points. They later rendezvoused at a motel in Brockton, counted the money, left and returned the following day to recount the money and divide it into shares.

The evidence given by DeLeary and Kelley was consistent. Various aspects of their testimony were corroborated by other witnesses.

In their defense both Novello and Dominico offered alibis which it was within the province of the jury not to believe.


*Denials of Motions for Pre-Trial Discovery.*[1]


Dominico moved for production and inspection of the "criminal records of each witness the Commonwealth intend[ed] to call" to testify at the trial. We assume that the object of this motion was the inspection of records of criminal convictions. See G. L. c. 233, § 21. Dominico also moved for production and inspection of the police records of all such witnesses. The trial judge granted the first motion only with respect to Kelley and DeLeary and denied the second motion. No prejudicial error resulted from these actions.

These motions were not requests for lists of witnesses appearing before the grand jury, *Commonwealth* v. *Jordan,* 207 Mass. 259, 264 (1911), or for access to witnesses in protective custody for purposes of interviewing them. *Commonwealth* v. *Balliro,* 349 Mass. 505, 515-517 (1965). Rather, they sought specific information about witnesses expected to appear at the trial. It is within the discretion of the trial judge to determine whether such information should be released. See *Commonwealth* v. *French,* 357 Mass. 356, 399 (1970), judgments vacated as to death

---

[1] Dominico's assignments of error 2 and possibly 3.*

* We have considered certain assignments of error not expressly argued and briefed by the defendants, but similar in subject to those expressly argued. We have indicated them by the word "possibly" in this and succeeding footnotes.

penalty sub nom. *Limone* v. *Massachusetts,* 408 U. S. 936 (1972). The Commonwealth is not obliged to summarize its evidence for the defendant, *Commonwealth* v. *Kiernan,* 348 Mass. 29, 34 (1964), cert. den. sub nom. *Gordon* v. *Massachusetts,* 380 U. S. 913 (1965), or to submit to full pre-trial discovery in criminal cases. *Commonwealth* v. *Roy,* 349 Mass. 224, 227 (1965). *Commonwealth* v. *Marsh,* 354 Mass. 713, 721-722 (1968). See also *Commonwealth* v. *Bartolini,* 299 Mass. 503, 505-508 (1938), cert. den. 304 U. S. 565 (1938).

Dominico also sought to inspect all relevant police reports on the theory that they are public records within the meaning of G. L. c. 4, § 7. The motion does not refer to any report in particular, nor does Dominico make a showing that there was in fact any particular record "(a) ... in which 'any entry has been made ... [pursuant to a legal requirement]' " or "(b) ... in which 'any entry ... is required to be made by law ....' " *Town Crier, Inc.* v. *Chief of Police of Weston,* 361 Mass. 682, 687 (1972). The trial judge was within the exercise of sound discretion in denying the motion. *Commonwealth* v. *French,* 357 Mass. 356, 399 (1970).

## *Right to a Speedy Trial.* [2]

The defendants Dominico and Novello argue that their constitutional right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and art. 11 of the Declaration of Rights of the Massachusetts Constitution was denied by the delay of nineteen months between indictment and trial.

In determining whether this right has been violated, we apply the guidelines set forth in *Barker* v. *Wingo,* 407 U. S. 514 (1972). *Commonwealth* v. *Horne,* 362 Mass. 738 (1973). The principal factors to be considered are the length of the

---

[2] Dominico's assignment 30 and Novello's assignment 1.

delay, the reason for it, the resultant prejudice to the defendant and the defendant's assertion of his right to a speedy trial.

The threshold question is whether the delay of nineteen months in this case is sufficient to require inquiry into whether or not the right has been violated. In the *Barker* case the Supreme Court noted that the length of permissible delay is related to the nature of the crime. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker* v. *Wingo, supra,* at 531. Here we have a joint enterprise with multiple defendants. Some leeway should be allowed the prosecution in preparing such a case. On the other hand, the United States Court of Appeals for the Second Circuit has promulgated rules requiring a case to be brought to trial within six months except in unusual circumstances. See *Barker* v. *Wingo, supra,* at 523, nn. 17, 18. A delay of nine months has also been held suspect where there appeared to be no legitimate reason for it. *United States* v. *Butler,* 426 F. 2d 1275 (1st Cir. 1970). We believe the delay of nineteen months in this case makes further inquiry necessary.

The defendants promptly asserted their right to a speedy trial. The Commonwealth argues that the requests for speedy trial made in July, 1969, were motivated by an apparent inability to make bail and should be disregarded since bail was made in August, 1969. As long as the right was clearly asserted, it is not necessary to probe defense counsel's purpose in demanding a speedy trial.

The reasons for the delay reflect the difficulty in setting trial dates for a complex multi-defendant criminal case. Although originally scheduled to begin on September 15, 1969, the trial was postponed when it became evident that Diaferio was without trial counsel. The central objective of pre-trial conferences held on September 16, 24 and 29 was to provide speedily for legal representation for Diaferio. At the first of these conferences, Diaferio suggested that Attorney Chisolm would represent him. The presiding

judge questioned the choice because Mr. Chisholm was already serving as counsel to a co-defendant, William Cresta, and the judge feared a conflict of interest. In view of this concern, Mr. Chisholm on September 29 filed an appearance on behalf of his associate Mr. Pidgeon, stating that Mr. Pidgeon would represent Diaferio.

During pre-trial conferences on October 2 and 3, numerous defense motions were filed. The issue of Diaferio's legal counsel appeared to be finally settled when Mr. Pidgeon was ordered by the presiding judge to represent Diaferio at trial. However, attempts by the assistant district attorney to set October 20 as a trial date were thwarted by Novello's counsel, who had a commitment in Ireland on that date. Further postponement to the middle of November posed a problem for the assistant district attorney who had conflicting trials and would be unavailable until January, 1970. As a result, no trial date was set.

Another series of pre-trial conferences occurred on April 27 and 29, 1970. Despite the fact that Diaferio again appeared to be without counsel, the assistant district attorney urged that the case be marked for trial on June 1, 1970. Counsel for Cresta objected to this date as it conflicted with several other trials. Counsel for Dominico requested that the trial be delayed until September, 1970. On May 4, 1970, the court set September 14, 1970, as the trial date. Two days later, Mr. Morelli was appointed to represent Diaferio at trial. A shift in assignment in the district attorney's office resulted in further postponement; and it should be noted that as late as the day before the trial one of the defendants, Merlino, was seeking a further continuance.

It is evident that a substantial part of the delay was caused by the defendants or their attorneys. When such is the case, they may not be heard to complain of the denial of their right to a speedy trial. *Commonwealth* v. *Loftis,* 361 Mass. 545, 549-550 (1972). Although the Commonwealth may have caused as much as five months of the delay due to conflicting trial responsibilities of several assistant district

attorneys and the failure speedily to prepare responses to the defendants' court-allowed motions, there is no basis in the record for viewing that part of the delay attributable to the Commonwealth as "[a] deliberate [prosecutorial] attempt to delay the trial in order to hamper the defense . . .." *Barker* v. *Wingo, supra,* at 531.

Finally, the defendants have not been substantially prejudiced by the delay. As they made bail in August, 1969, it cannot be maintained that they suffered prolonged incarceration. The defendants contend in their briefs that the delay materially impaired the preparation of their defense, pointing most prominently to memory lapses of the key prosecution witnesses, Kelley and DeLeary. Were the defendants alleging specific instances of memory loss by crucial defense witnesses, their claim might have been tenable. *Barker* v. *Wingo, supra,* at 532. However, we fail to see how memory loss by prosecution witnesses in the circumstances of this case can be regarded as prejudicial to the defendants. On the contrary, counsel for the defendants repeatedly used such memory lapses in an attempt to impeach the credibility of Kelley and DeLeary.

In his brief, counsel for Novello informed this court of the death two months before the trial of a person who would have been an alibi witness. The death of a witness can, of course, be prejudicial. *Barker* v. *Wingo, supra,* at 532. However, we are told nothing more about this witness, not even his or her identity. More important, the point appears not to have been raised before the trial judge in connection with Novello's motion to dismiss. Novello failed to carry the burden of introducing evidence to support this contention (*Commonwealth* v. *Jones,* 360 Mass. 498, 502 [1971]; *Commonwealth* v. *Gove, ante,* 614, 620, n. 8 [1973]) and his counsel's affidavit, sworn to the day before trial, supporting Novello's motion to dismiss, contained no suggestion of this contention.

Reviewing all pertinent factors, we find no error in the judge's denial of the motions to dismiss for want of a speedy trial.

Commonwealth *v.* Dominico.

### *Denial of Motions for Severance.*[3]

The defendants contend that the denial of their motions for severance violated their right to an impartial jury guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. There are two related but separate bases for their argument. The first is that the procedure authorized by G. L. c. 234, § 29, and followed in this case, allowing the Commonwealth "as many such challenges as equal the whole number to which all the defendants in the case are entitled" is unconstitutional. The second is that the conflicting use of peremptory challenges by the various counsel for the defendants resulted in the unfair dismissal of jurors favorable to one defendant because they were challenged by counsel for a co-defendant.

The procedure permitting the Commonwealth cumulative peremptory challenges in multiple defendant trials has been expressly upheld in *Commonwealth* v. *Millen,* 289 Mass. 441, 486-487 (1935). "Severence was not required because of the effect of the joint trial upon the number of peremptory challenges by the Commonwealth and the defendants, respectively." *Commonwealth* v. *French,* 357 Mass. 356, 376 (1970).

Nor is severance constitutionally mandated because of the conflicting peremptory challenges exercised by counsel for the defendants. In *Stilson* v. *United States,* 250 U. S. 583, 586-587 (1919), the Supreme Court in upholding the constitutionality of a Federal statute allowing only ten peremptory challenges to the defense, regardless of the number of defendants on trial, specifically addressed itself to the dilemma posed by the defendants here: "It may be . . . that all defendants may not wish to exercise the right of peremptory challenge as to the same person or persons,

---

[3] Dominico's assignment 44 and possibly assignments 32, 38, 40, 41, 45, 46, 47; Novello's assignment 5; Merlino's assignments 5, 6, 7. Merlino's assignment 3, while denominated "severance," is more accurately related to the denial of the motion for a continuance and is so treated in this opinion.

and that some may wish to challenge those who are unobjectionable to others. But this situation arises from the exercise of a privilege granted by the legislative authority and does not invalidate the law. The privilege must be taken with the limitations placed upon the manner of its exercise." The Supreme Court has continued to adhere to the proposition that peremptory challenges, though important, are a matter of privilege and are not constitutionally compelled. *Swain* v. *Alabama,* 380 U. S. 202 (1965). This has also been the position of other Federal courts when confronted with situations similar to the one before us. *Gradsky* v. *United States,* 342 F. 2d 147, 152-153 (5th Cir. 1965). *United States* v. *Crutcher,* 405 F. 2d 239, 245 (2d Cir. 1968). *United States* v. *Williams,* 463 F. 2d 393, 395 (10th Cir. 1972). We find no violation of the defendants' rights to an impartial jury in the denial of the motions for severance. Nor do we find any abuse of discretion in denying these motions. See *Commonwealth* v. *Fancy,* 349 Mass. 196, 204-205 (1965); *Commonwealth* v. *Connearney,* 359 Mass. 200, 204-205 (1971).

### *Denial of Motion for Continuance.*[4]

The defendant Merlino assigns as error the trial judge's refusal to grant his motion for continuance. He argues that the judge's actions resulted in the denial of his right to effective assistance of counsel. "Whether a motion for continuance should be granted lies within the sound discretion of the judge, whose action will not be disturbed unless there is patent abuse of that discretion, which is to be determined in the circumstances of each case." *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 517-518 (1972). *Commonwealth* v. *LaFleur, ante,* 327, 330 (1973). On the facts presented here, we find no abuse of discretion.

Following a judicial determination of Merlino's indigency, the Massachusetts Defenders Committee was

---

[4] Merlino's assignments 2 and 3. See p. 704, n. 3, *ante.*

appointed to represent the defendant on December 9, 1970. On that date, the Committee assigned Thomas Herbert to the case. In affidavits in support of his motion for continuance, Mr. Herbert stressed his extremely heavy caseload during the month between his appointment and the trial. He also cited the repeated refusals of prison officials to allow him access to his client and the lack of coöperation of the prosecutor in making documents available for inspection pursuant to court order. The judge made no findings as to the truth of any such assertion.

We are aware of the increasingly burdensome caseloads of public defenders, an outgrowth of the expansion of the right to counsel. See *Argersinger* v. *Hamlin,* 407 U. S. 25, 37, n. 7 (1972). The issue, however, is whether these factors so hampered Mr. Herbert's efforts as to result in ineffective representation of counsel. We conclude that Mr. Herbert's performance was not ineffective, much less "so incompetent as to deprive his client of a trial in any real sense — render[ing] the trial a mockery and a farce." *Commonwealth* v. *Bernier,* 359 Mass. 13, 17 (1971). The transcript reveals that Merlino was well represented.

*Selection and Composition of the Jury.*[5]

1. The defendant Dominico claims error in that the trial judge excused veniremen in the absence of both the defendants and their counsel, and in that he refused to give counsel information concerning the excused veniremen. The trial judge may in the exercise of his sound discretion excuse veniremen in the absence of defendants and their counsel. *Commonwealth* v. *French,* 357 Mass. 356, 400 (1970). See also *Commonwealth* v. *Green,* 302 Mass. 547, 550 (1939). We see no abuse of that discretion. What information defense counsel sought was immaterial and irrelevant to their cause. Their requests were properly denied.

---

[5] Dominico's assignments 31 and 48.

2. A more difficult question is raised by the assertion of the defendants that it was error for the trial judge not to have excused for cause the juror Francis Feeley. At the time of the trial, Feeley was employed by Wm. Filene's Sons Company, Inc., as a stockman in its Somerville store. Cash and checks collected from the Boston branch of Filene's were included in the money stolen from truck No. 6280. This employment relationship requires inquiry as to whether Feeley properly should have been excused for cause. See *Boston* v. *Baldwin,* 139 Mass. 315 (1885); *Commonwealth* v. *Subilosky,* 352 Mass. 153, 161 (1967).

Another ruling by the trial judge sheds light on the reasoning he applied in refusing to excuse Feeley for cause. Before Feeley was called, another venireman who was employed at Filene's was examined. When asked to comment upon the standard questions regarding her bias or predisposition as a juror, she responded that she was employed as an auditor in Filene's Boston store and "kept" her checks with Brink's. The trial judge excused her for cause. Feeley, by contrast, did not respond affirmatively to the standard questions. More importantly, his work in no way involved handling or accounting for money, nor did he have regular dealings with Brink's in the course of his employment. Finally, he was not employed at the store from which the Brink's truck made a pickup that day. We believe that these factual considerations are critical.

In *United States* v. *Boyd,* 446 F. 2d 1267, 1275 (5th Cir. 1971), certain jurors were employees on an Air Force base from which Boyd allegedly stole property in an amount in excess of one hundred dollars. The court said that government employment alone does not disqualify a juror. "Factors such as the size of the Base, any connection between the jurors and base security or the department from which the property was stolen, or their removability from employ would have a bearing on actual bias. . . . [H]ad [there existed] a closer connection to the circumstances of this prosecution than mere employment at the military base, a case of implied bias might be presented." So, too, has the Supreme Court held that a

person employed by the United States Treasury Department was competent to sit as a juror in a criminal prosecution for violation of narcotic laws so long as his employment was not connected with the Narcotics Bureau (an agency of the Treasury Department), and so long as no actual bias was shown. *Frazier* v. *United States,* 335 U. S. 497, 512-514 (1948).

The defendants have not demonstrated actual bias on the part of Feeley nor do we feel that such bias should be inferred from his employment. There was no error in having failed to excuse Feeley for cause.

## *Prejudicial Jury View.*[6]

Under G. L. c. 234, § 35, "[t]he court may order a view by a jury impanelled to try a criminal case." The granting or denial of a request for a jury view rests within the discretion of the trial court. *Commonwealth* v. *Chance,* 174 Mass. 245, 247 (1899). *Commonwealth* v. *Gedzium,* 259 Mass. 453, 462 (1927), overruled on other grounds in *Connor* v. *Commonwealth,* 363 Mass. 572, 575 (1973). *Commonwealth* v. *Lamoureux,* 348 Mass. 390, 392 (1965). The defendant Novello contends that it was an abuse of discretion to hold a jury view during the day since the alleged crime occurred on a dark, rainy night. We disagree.

While this appears to be a novel issue in this Commonwealth, no abuse of discretion has been found in similar circumstances in other jurisdictions. *Goetz* v. *Burgess,* 72 Idaho 186, 193 (1951). *Blewett* v. *Barnes,* 62 N. M. 300, 307 (1957). This is not a case where there has been a material change in conditions at the scene between the time of the crime and the time of the view. See *Albright* v. *Sherer,* 223 Mass. 39, 42-43 (1915); *Guinan* v. *Famous Players - Lasky Corp.* 267 Mass. 501, 522 (1929). Nor is it a case where cautionary instructions were required to call the jury's attention to an incident occurring during the view.

---

[6] Novello's assignment 6.

*Commonwealth* v. *Madeiros,* 255 Mass. 304, 313 (1926). There was no necessity for instructing the jurors as to the difference between day and night, nor for their viewing the scene under particular conditions of illumination. The purpose of a jury view — "to enable the jury to understand better the testimony which has or may be introduced" (*Commonwealth* v. *Dascalakis,* 246 Mass. 12, 29 [1923]) — was fulfilled here without prejudice to the defendant.

### *Grand Jury Minutes.*[7]

The defendants excepted to the trial judge's denials of their repeated requests for inspection of the grand jury minutes. Initial requests were made prior to the commencement of the trial. These requests were renewed at the conclusion of the direct examination of both Kelley and DeLeary and twice during the cross-examination of Kelley. On several occasions the judge stated that he had read the grand jury minutes and that his denials were based thereon. The judge, at one point during the cross-examination of Kelley, specifically agreed to re-read those minutes. He did so during a luncheon recess, and once again denied the motion for copy or inspection.

The law in this respect is well settled. The Supreme Judicial Court has held that "granting permission to examine grand jury minutes rests in the discretion of the judge. *Commonwealth* v. *Balliro,* 349 Mass. 505, 518. See *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 462; *Commonwealth* v. *Galvin,* 323 Mass. 205, 211. Where it is alleged that an inconsistency exists between a witness' testimony at the trial and his testimony before the grand jury, it is appropriate for the trial judge to read the minutes to determine if there is an inconsistency, and, if it is found to exist, to permit defendant's counsel to examine the grand jury testimony. *Commonwealth* v. *Kiernan,* 348

---

[7] Dominico's assignments 3 and 147, and possibly 100 and 161; Novello's assignments 2 and 3; Merlino's assignment 1.

Mass. 29, 36. . . . *Commonwealth* v. *Abbott Engr. Inc.* 351
Mass. 568, 578-579. . . . [W]here a particularized need for
an examination of the grand jury minutes is shown which
outweighs the policy of secrecy, the defendant may be
entitled to them. *Commonwealth* v. *Ladetto,* 349 Mass.
237, 244-245." *Commonwealth* v. *Doherty,* 353 Mass. 197,
209-210 (1967), overruled on other grounds in *Connor* v.
*Commonwealth,* 363 Mass. 572, 575-576 (1973). See also
*Commonwealth* v. *Carita,* 356 Mass. 132, 140-141 (1969);
*Commonwealth* v. *De Christoforo,* 360 Mass. 531, 534-536
(1971). The burden of showing particularized need is on the
defense. *Pittsburgh Plate Glass Co.* v. *United States,* 360
U. S. 395 (1959). It does not appear from the record before
us that the judge failed to exercise his discretion with
fairness, or that he did not act within the bounds defined by
law. This court must decline the appellants' invitation to
have us review and reconsider the practice in this Com-
monwealth with respect to grand jury minutes. While there
may be some merit to their position (see *Dennis* v. *United
States,* 384 U. S. 855, 872-875 [1966]; *United States* v.
*Youngblood,* 379 F. 2d 365 [2d Cir. 1967]; *Schlinsky* v.
*United States,* 379 F. 2d 735 [1st Cir. 1968]; *Cargill* v.
*United States,* 381 F. 2d 849 [10th Cir. 1967]; *Allen* v.
*United States,* 390 F. 2d 476 [D. C. Cir.1968]; *United
States* v. *Amabile,* 395 F. 2d 47 [7th Cir. 1968]; *Harris* v.
*United States,* 433 F. 2d 1127 [D. C. Cir. 1970]), a change in
a practice so long settled and so recently reaffirmed[8] must
come from the Supreme Judicial Court or from the Legisla-
ture.

*Denial of Motions for Mistrial.*[9]

The defendant Dominico asserts that he was entitled to a
mistrial on two occasions, the first after a mistrial was
declared as to his co-defendant Diaferio and the second

---

[8] But see the dissenting opinion of Justice Spiegel in *Commonwealth* v. *De
Christoforo, supra,* at 550-555.

[9] Dominico's assignments 35 and 199.

after the assistant district attorney's reference to Dominico's $100,000 bail. We see no error in the trial court's denial of these motions.

A mistrial was declared for Diaferio after he was hospitalized with a heart condition. Dominico's counsel stated in his motion for mistrial that Diaferio's testimony would tend to exculpate his client and discredit the testimony of Kelley, the government's key witness. However, counsel for Dominico made no offer of proof that Diaferio would have waived his Fifth Amendment right against self-incrimination and taken the stand had his trial continued. "[A]n accused in a mass conspiracy trial may not put on his co-defendants without their prior waivers of their absolute rights not to testify. . . . Even at a severed trial of only one defendant, another alleged coconspirator may, if called to testify, invoke his privilege against self-incrimination." *Biancone* v. *United States,* 405 U. S. 936, 941, and n. 4 (1972) (Douglas, J., dissenting). Without such a showing, the motion for mistrial was properly denied. We need not consider whether it might have been proper for the judge to allow the motion if such a showing had been made.

In contesting the denial of his second motion for mistrial, Dominico argues that the question concerning his $100,000 bail was inflammatory, prejudicial and designed to deny him a fair trial. The trial judge excluded the question and immediately gave a curative instruction to the jury to disregard it. While a mistrial may be declared in some instances, curative instructions have generally been held sufficient to render improper comment harmless error. *Commonwealth* v. *Connolly,* 308 Mass. 481, 497 (1941). *Commonwealth* v. *Balakin,* 356 Mass. 547, 553 (1969). *Commonwealth* v. *De Christoforo,* 360 Mass. 531, 536-538 (1971). The setting of $100,000 bail is no clearer indication of the dangerousness of Dominico than the gravity of the offense for which he was being tried. See *Commonwealth* v. *Nassar,* 351 Mass. 37, 44 (1966). We think the trial judge did all that was necessary to offset whatever prejudice might have resulted from the prosecutor's question.

## *Restricted Cross-Examination.*[10]

The defendants contend that the trial judge unreasonably restricted their cross-examination of Kelley and DeLeary, the two central prosecution witnesses, resulting in a denial of the defendants' rights under the Sixth and Fourteenth Amendments to the United States Constitution. In particular, they assign as error the exclusion of questions designed to show criminality and bias of the witnesses.

The right of cross-examination is implicit in the constitutional right of confrontation and is essential to a fair trial. *Bruton* v. *United States,* 391 U. S. 123 (1968). *Chambers* v. *Mississippi,* 410 U. S. 284 (1973). It is made obligatory on the States by the Fourteenth Amendment. *Pointer* v. *Texas,* 380 U. S. 400 (1965). Although the trial judge has wide discretion in controlling the scope of cross-examination, he may not halt it at the threshold of inquiry. *Alford* v. *United States,* 282 U. S. 687 (1931). *Smith* v. *Illinois,* 390 U. S. 129 (1968).

In the case before us, defense counsel, on cross-examination, repeatedly propounded questions to demonstrate that Kelley was a professional criminal. These included inquiries about his occupation as a bank robber, about his methods of planning robberies, about his trips to New York and elsewhere allegedly for the purpose of planning additional robberies and about a carbine used in a Rhode Island murder. All of these questions were excluded by the trial judge. To curb this line of questioning, the judge ruled that if counsel wished to impeach the witness' credibility by reference to alleged criminal activity, counsel could do so only by the introduction of the records of the witness' convictions. When such questioning continued, the judge further ruled that all questions suggesting Kelley's in-

---

[10] Dominico's assignments 78, 101, 102, 108, 109, 119, 120, 123, 124, 128, 129, 137, 138, 139, 145, 168-173, 181, 192 and possibly assignments 19, 104, 107, 110-115, 127, 146, 149, 152, 158, 160, 166; Novello's assignment 7; Merlino's assignments 11, 13-17.

volvement in other crimes must first be submitted to judicial scrutiny in the absence of the jury. The defendants also challenge this procedure.

Evidence material to prove an issue in a case is not incompetent simply because it discloses criminal activity on the part of a witness. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 314 (1926). *Commonwealth* v. *Mercier,* 257 Mass. 353, 368 (1926). *Commonwealth* v. *West,* 312 Mass. 438 (1942). *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973). If evidence of criminality is introduced to impeach a witness' credibility, however, it can be done only by the production of the records of criminal convictions under G. L. c. 233, § 21. *Commonwealth* v. *Danton,* 243 Mass. 552, 554 (1923). *Commonwealth* v. *West,* 312 Mass. 438, 440 (1942). *Commonwealth* v. *Connolly,* 356 Mass. 617, 627 (1970). The sole purpose of the questions asked of Kelley was to discredit his testimony. There was no abuse of discretion in excluding them. *Commonwealth* v. *Homer,* 235 Mass. 526, 535-536 (1920). See *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 278, 280 (1962). The procedure established to shield the jury from repeated reference to Kelley's criminal activity was a restriction necessary to effectuate the purpose of § 21. See *Commonwealth* v. *Banuchi,* 335 Mass. 649, 654 (1957); *Commonwealth* v. *Welcome,* 348 Mass. 68, 70-71 (1964).

The defendants further contend that they were denied their rights to effective cross-examination of Kelley and DeLeary by the exclusion of questions concerning promises of lenient dispositions and other favorable treatment. That there is a right to cross-examine witnesses as to whether they have been offered rewards for their testimony appears to be settled in Massachusetts. *Commonwealth* v. *Sacket,* 22 Pick. 394 (1839). Cf. *Commonwealth* v. *Tomasselli,* 257 Mass. 479, 482-483 (1926). This comports with the trend in other jurisdictions that cross-examination as to promises of leniency or immunity is a matter of right. *Cash* v. *Culver,* 358 U. S. 633, 637-638 (1959). *Patriarca* v. *United States,* 402 F. 2d 314, 323 (1st Cir. 1968). *Thurman* v. *United States,* 316 F. 2d 205 (9th Cir. 1963). *State* v. *Smith,* 264

Minn. 307, 316-317 (1962). *State* v. *White,* 146 Mont. 226, 238 (1965). But see *Harrod* v. *United States,* 29 F. 2d 454 (D. C. Cir. 1928).

We believe that the defendants had a right to cross-examine witnesses concerning inducements to testify. We believe, however, that this right was not violated by the trial judge's rulings. He permitted cross-examination tending to show that the witnesses had been told that their coöperation would be brought to the attention of the court for its consideration in the disposition of their cases and that Kelley had been promised a new identity, relocation and protective custody with conjugal visitation, but had not been promised monetary rewards. Even where cross-examination is a matter of right, the trial judge "in his discretion may exclude further examination even in these areas, where the inquiry permitted has been sufficient and further proposed inquiry is repetitious." *Commonwealth* v. *Carroll,* 360 Mass. 580, 589 (1971).

The defendants Dominico and Merlino also allege that it was error to exclude questions concerning their appearances in prior criminal proceedings in which Kelley was either an adverse witness or a defendant. In the case of Dominico, questioning would have shown that Kelley had previously testified against Dominico in a Federal trial and that Dominico had been acquitted. In Merlino's case, the question was whether Kelley believed that Merlino had caused him to be indicted for the Plymouth mail robbery. The defendants argue that these questions were asked in order to show bias on the part of the witness and should have been admitted as of right.

Although "cross-examination for the purpose of showing falsity of other testimony of the witness or bias and prejudice on his part is matter of right" (*Commonwealth* v. *Russ,* 232 Mass. 58, 79 [1919]; *Commonwealth* v. *Taylor,* 319 Mass. 631, 634 [1946]; *Commonwealth* v. *Carroll, supra,* at 589), it is also true that "[t]he trial judge has wide discretion in determining the extent to which witnesses may be examined or cross-examined on facts which are

otherwise immaterial but are offered for the sole purpose of showing bias or prejudice." *Commonwealth* v. *Redmond,* 357 Mass. 333, 339-340 (1970), and cases cited. This is consistent with the general rule that the length and limits of cross-examination are within the court's discretion. *Commonwealth* v. *Mercier,* 257 Mass. 353, 371-372 (1926). *Commonwealth* v. *Geagan,* 339 Mass. 487, 508 (1959). *Commonwealth* v. *Harrison,* 342 Mass. 279, 286 (1961).

In *Commonwealth* v. *Redmond, supra,* where it was held that the Commonwealth had a right to bring to the jury's attention the possible bias of a witness in whose favor the defendant had testified at a prior criminal trial, the prior trial had been on charges made against the witness as a result of a discovery made by the police at the time they had arrested the defendant. In *Commonwealth* v. *Byron,* 14 Gray 31 (1859), the defendant was charged with perjury. A key government witness was a person against whom the defendant had brought a tort action prior to his indictment. The trial judge had rejected evidence to the effect that the witness had been instrumental in obtaining the indictment and offered to "do all she could to stop further proceedings in this perjury case if the defendant would withdraw his said civil action against her." The court felt such evidence was improperly excluded and was competent to show bias. Both cases are distinguishable from the one before us in that the potential for bias is far greater where there is a clear connection between the proceedings themselves than where a witness has simply testified or given information for or against a defendant in an unrelated matter.

In *Pond* v. *Pond,* 132 Mass. 219 (1882), evidence that the libellee had been a witness at her mother's divorce proceeding was sought to be introduced to show the bias of the mother testifying at the libellee's divorce proceeding. The Supreme Judicial Court upheld the exclusion of that testimony as within the proper bounds of judicial discretion. There, as here, the proceedings were similar in nature but not related. In light of all the surrounding circumstances the trial judge might well have allowed these

questions as to bias, but we cannot say it was an abuse of discretion to exclude them.

### Admission of Items Not Previously Inspected by the Defendant.[11]

A pre-trial motion was allowed ordering inspection by defense counsel of documents and other tangible evidence "which the Commonwealth intends to rely on in the trial . . . ." At the trial, the prosecution introduced a wrapper which allegedly had contained DeLeary's share of the stolen money, business records of the Bank of Ireland and a palm print of John Kelley. The jury was also permitted to view an automobile allegedly used in the robbery. The defendant Dominico maintains that he was not given an opportunity to inspect these items and that the trial judge should not have allowed them in evidence. The Commonwealth contends that it did not have possession of this evidence until after the December 18 deadline for inspection and that its three-page submission of January 11, 1971, to defense counsel, listing the evidence to be used at trial, substantially complied with the court order.

We do not accept the defendant's contention that the court order amounted to a stipulation that no physical evidence not previously inspected by defense counsel would be used at trial. Thus, cases such as *Doherty* v. *Shea,* 320 Mass. 173 (1946), cited by the defendant, are inapplicable. The cases cited in Dominico's brief concerning the constitutional right to notice of the charges against him are not in point. There is no clear constitutional requirement that the State disclose all evidence admissible and useful to the defense. See *Giles* v. *Maryland,* 386 U. S. 66, 73-80 (1967). Nor has the defendant carried the burden of showing that he was in any way prejudiced by his not having viewed the several items in question prior to trial. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 600-601 (1943). *Commonwealth* v. *McCann,* 325 Mass. 510, 511 (1950).

---

[11] Dominico's assignments 53, 73, 82, 93, and possibly 163.

*Miscellaneous Evidentiary Points.*[12]

1. Out-of-court statements of William Cresta were introduced in evidence by the testimony of DeLeary. The trial judge admitted these statements against all of the defendants upon the district attorney's representation that a joint enterprise would be proved. At that time, the judge informed counsel that this testimony would be subject to a motion to strike at the close of all the evidence. The judge later denied motions to strike the testimony and issued general limiting instructions to the jury regarding the admissibility of one co-defendant's statements or acts against all other co-defendants once a criminal conspiracy or joint venture has been made out. The same procedure was evidently followed regarding out-of-court statements of Philip Cresta introduced in evidence by the testimony of Kelley.

These statements were admitted under the well recognized coconspirator's exception to the hearsay rule. See *Commonwealth* v. *Stuart,* 207 Mass. 563, 567 (1911); *Attorney Gen.* v. *Pelletier,* 240 Mass. 264, 313 (1922); *Commonwealth* v. *Shea,* 323 Mass. 406, 414-415 (1948). It is conceded by the defendant Dominico, who alone presses the assignment at issue, that this exception also applies to joint enterprises of co-defendants where conspiracy is not formally charged in the indictment. *Commonwealth* v. *Flynn,* 362 Mass. 455, 476-477 (1972). Traditionally, the trial judge must make a preliminary finding that a prima facie conspiracy exists before admitting evidence of acts or statements of one of the coconspirators against all the others. *Krulewitch* v. *United States,* 336 U. S. 440, 453 (1949) (Jackson, J., concurring). *Commonwealth* v. *Mac Kenzie,* 211 Mass. 578, 580-581 (1912). *Commonwealth* v. *Benesch,* 290 Mass. 125, 132-133 (1935). *Commonwealth* v. *Stasiun,* 349 Mass. 38, 50-51 (1965). *Commonwealth* v.

[12] Dominico's assignments 70, 76, 80, 95, 97, 98, 99, 122, 125, 126, 135, 151, 184, 185, 195, 202, 211 and possibly assignments 68, 69, 94, 196, 214; Merlino's assignments 10 and 19.

*Flynn,* 362 Mass. 455, 476-477 (1972). In *Commonwealth* v. *Kiernan,* 348 Mass. 29, 56-58 (1964), the trial judge departed from this procedure and adopted the approach followed by the trial judge in the case before us, which, like *Commonwealth* v. *Kiernan,* involved the danger of an unduly cumbersome trial. Based on the *Kiernan* decision, expressly referred to by the trial judge, we find no error in his handling of this situation. See also *Dutton* v. *Evans,* 400 U. S. 74 (1970); *United States* v. *Puco,* 476 F. 2d 1099 (2d Cir. 1973). We find nothing in *Griffin* v. *California,* 380 U. S. 609 (1965), or in *Bruton* v. *United States,* 391 U. S. 123 (1968), which requires exclusion of Philip Cresta's statements solely because he was not present at the trial.[13]

2. When questioned by the district attorney about threats made by Kelley, DeLeary answered: "Not I, but he didn't give me a chance to talk. My children." In context, DeLeary appears to have meant that had counsel for Dominico afforded DeLeary an opportunity to respond fully to his question, DeLeary would have testified that Kelley had not threatened him personally but had threatened his children. We find no prejudicial error in refusing a motion to strike the clause "he didn't give me a chance to talk." The salient portion of DeLeary's answer was responsive to the question. Moreover, as counsel for Dominico had raised the issue of threats on cross-examination, it was proper to seek clarification on redirect. McCormick, Evidence (2d ed.) § 32.

3. There was no error in admitting Kelley's in-court identification of the defendant Dominico without previously having conducted a voir dire. The granting of a voir dire is generally within the discretion of the trial court. *Commonwealth* v. *Nassar,* 354 Mass. 249, 259 (1968). *Commonwealth* v. *Therrien,* 359 Mass. 500, 507 (1971). Furthermore, Kelley testified that he had known Dominico

---

[13] *Pointer* v. *Texas,* 380 U. S. 400 (1965), *Douglas* v. *Alabama,* 380 U. S. 415 (1965), and *Barber* v. *Page,* 390 U. S. 719 (1968), do not support this proposition. The case before us involves a recognized exception to the hearsay rule and does not involve a confession or other statements "crucial" or "devastating" to the defendant. See *Dutton* v. *Evans,* 400 U. S. 74, 86-87 (1970).

for several years. He was identifying an associate. The circumstances of the identification here are completely different from those cases where the in-court identification may be the product of an impermissibly suggestive out-of-court identification, such as in *United States* v. *Wade,* 388 U. S. 218 (1967).

4. Dominico contends that questions which elicited crucial answers from Kelley concerning the planning of the robbery and the intended roles of each defendant in it should have been excluded on the grounds of being vague and indefinite and calling for conclusory answers. Given the witness' inability to remember the precise wording of conversations held over two years earlier, we cannot say that the questions were so improper in form as to require exclusion. *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 318-319 (1973). McCormick, Evidence (2d ed.) § 6.

5. Dominico cites *Smith* v. *Illinois,* 390 U. S. 129, 130-131 (1968), for the proposition that his counsel had an absolute right to cross-examine Kelley concerning various aliases, namely, the Great One, the Great Planner and the Mastermind, which he had used. In the *Smith* case, the defendant's rights under the Sixth and Fourteenth Amendments were violated as a result of the trial judge's failure to allow cross-examination concerning the real name and address of the witness, who had testified under an alias. "Prejudice ensues from a denial of the opportunity to place the witness in his proper setting . . . ." *Alford* v. *United States,* 282 U. S. 687, 692 (1931). *Smith* v. *Illinois,* 390 U. S. 129, 132 (1968). Here, extensive cross-examination of Kelley, which revealed his background, character and prior criminal convictions, placed him "in his proper setting" so that his credibility could be reasonably evaluated by the jury. We are of the opinion that no prejudice resulted from the trial judge's refusal to allow cross-examination regarding Kelley's aliases. See *United States* v. *Alston,* 460 F. 2d 48, 51-53 (5th Cir. 1972), cert. den. 409 U. S. 871 (1972); *United States* v. *Jordan,* 466 F. 2d 99, 102 (4th Cir. 1972), cert. den. 409 U. S. 1129 (1973).

6. We have carefully examined the defendants' remain-

ing evidentiary contentions. We find none which requires the sustaining of an exception.

### *The Jury Charge.*[14]

The defendants contend that the jury charge was defective. The first part to which they object reads: "I suggest to you that you should give the testimony of DeLeary and Kelley close scrutiny, but no closer scrutiny than any other witness." They argue that such evidence is uncorroborated accomplice testimony which is highly suspect and thus should be examined more carefully than other testimony. Even if we were to accept that view, a view disputed by the Commonwealth, this contention is without merit.

At one time it was thought necessary to instruct a jury to acquit if the only evidence before it was uncorroborated accomplice testimony. *Commonwealth* v. *Bosworth,* 22 Pick. 397, 399 (1839). This instruction was subsequently deemed to be discretionary rather than mandatory. *Commonwealth* v. *Savory,* 10 Cush. 535, 538 (1852). *Commonwealth* v. *Holmes,* 127 Mass. 424, 440-441 (1879). It is now well settled that a jury can convict upon the uncorroborated testimony of an accomplice. While the trial judge may tell the jury to scrutinize accomplice testimony with great care, he is not required to do so. *Commonwealth* v. *French,* 357 Mass. 356, 396 (1970). *Commonwealth* v. *Flynn,* 362 Mass. 455, 467 (1972).

The defendants cite language in *Crawford* v. *United States,* 212 U. S. 183, 204 (1909),[15] for the proposition that it is improper to instruct a jury not to consider accomplice testimony with greater care. A jury charge should not be dissected into its component parts but must be evaluated as a whole. *Commonwealth* v. *Aronson,* 330 Mass. 453, 457

[14] Dominico's assignments 219 and 222; Novello's assignment 4; Merlino's assignments 20 and 21.

[15] "On the contrary, the evidence of such a witness ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses."

(1953). *Commonwealth* v. *Greenberg,* 339 Mass. 557, 585 (1959). *Commonwealth* v. *Redmond,* 357 Mass. 333, 342 (1970). We read the above-quoted part of the charge as focusing on the testimony of witnesses whose credibility was in issue: namely the testimony of Kelley and DeLeary on the one hand, and on the other hand the testimony of the defendants' alibi witnesses who were all relatives with the biases normally associated with such relationships, and whose testimony certainly also required careful examination. We think the charge, taken as a whole, was fair.

The defendants also object that the portion of the charge relating to promises of leniency made to Kelley and DeLeary was irrelevant and improper. They seek to show prejudice on the somewhat inconsistent grounds (1) that it tended to undercut their attempts to impeach Kelley and DeLeary by focusing on the judge's intentions instead of the witnesses' expectations, and (2) that it tended to suggest to the jurors that verdicts favorable to the Commonwealth might result in the rewarding of Kelley and DeLeary for their coöperation with the prosecution. These interpretations strain the judge's language beyond the range of inferences that can reasonably be drawn from it. We believe that the instruction was not prejudicial within the context of the entire charge. *Commonwealth* v. *Pinnick,* 354 Mass. 13, 15 (1968).

The defendant Dominico also alleges error concerning that part of the jury instructions relating to the ownership of the stolen property. The indictment had charged the defendants with taking "property of Brink's Incorporated." The judge instructed the jury that Brink's ownership of the monies was immaterial. There was no error in the jury charge.

"The essence of robbery is the exertion of force, actual or constructive, against another in order to take personal property . . . . It is not affected by the state of the legal title to the goods taken." *Commonwealth* v. *Weiner,* 255 Mass. 506, 509 (1926). *Commonwealth* v. *Novicki,* 324 Mass. 461, 464 (1949). In the case before us, Brink's was in possession of various sums of money and was specifically charged with

their protection. There is no fatal variance between the indictment and the proof. *Commonwealth* v. *Subilosky,* 352 Mass. 153, 166 (1967). See also *Commonwealth* v. *Kiernan,* 348 Mass. 29, 50 (1964); *Commonwealth* v. *Sloane,* 361 Mass. 872 (1972).

### *Delay in Appellate Process.*

The defendant Dominico further contends that the two year delay between the claiming and docketing of his appeal constitutes a denial of due process of law.[16] Several Federal courts have stated that "an inordinate, excessive and inexcusable delay may very well amount to a denial of due process . . .." *Jones* v. *Crouse,* 360 F. 2d 157, 158 (10th Cir. 1966). *Odsen* v. *Moore,* 445 F. 2d 806, 807 (1st Cir. 1971). This principle also applies where there is a direct appeal rather than a request for post-conviction relief. *Way* v. *Crouse,* 421 F. 2d 145 (10th Cir. 1970).

The question of delay in the appellate process has arisen in these cases in connection with a petition for a Federal writ of habeas corpus in circumstances where the petitioner has failed to exhaust State remedies. The Courts of Appeals for the various Circuits have refused to issue the writs but have remanded the cases to the Federal District Courts for evidentiary hearings to determine the reason for delay, *St. Jules* v. *Beto,* 462 F. 2d 1365 (5th Cir. 1972), or to ascertain whether the State court has decided the appeal. *United States ex rel. Senk* v. *Brierley,* 471 F. 2d 657 (3d Cir. 1973). It has been indicated that a State court decision on the appeal would make the issue moot. *Way* v. *Crouse, supra,* at 147. *United States ex rel. Senk* v. *Brierley, supra,* at 660.

We do not believe that these Federal decisions carve out a new constitutional right to a speedy appeal. Rather, we view them as only reaffirming the right of the Federal courts to intervene in State court proceedings where there

---

[16] Dominico's appeal was claimed February 12, 1971. The clerk's docket indicates that it was entered in this court on February 12, 1973. It was argued on May 25, 1973.

are no other means available of vindicating constitutional rights.

Accordingly, we believe that the issuance of our opinion in this case makes it unnecessary to consider further the question of delay in the appellate process.[17]

We need not consider the many additional assignments of error as they were not briefed or argued and are therefore deemed waived.[18]

*Judgments affirmed.*

---

[17] We note, however, as was the case with the delay of the trial, that the defense attorneys bear considerable responsibility for causing the delay in processing the appeal. The filing of numerous post-trial motions made it necessary for the papers to be before the Superior Court during much of this period. In addition, counsel for Dominico and Merlino, as late as September and October, 1972, were requesting extensions of the period for filing assignments of error. For a more detailed discussion of the causes of the delay, see the memorandum opinion of United States Magistrate Davis in *Dominico* v. *Higgins,* Misc. Civ. No. 72-135-G(D. Mass. Nov. 9, 1972).

[18] Appeals Court Rule 1:13. We have not considered Dominico's assignments 1, 4-18, 20, 21, 22-29, 33, 34, 36, 37, 39, 42, 43, 49-52, 54-67, 71, 72, 74, 75, 77, 79, 81, 83-92, 96, 103, 105, 106, 116, 117, 118, 121, 130-134, 136, 140-144, 148, 150, 153-157, 159, 162, 164, 165, 167, 174-180, 182, 183, 186-191, 193, 194, 197, 198, 200, 201, 203-210, 212, 213, 215-218, 220, 221, 223; Novello's assignment 8; or Merlino's assignments 4, 8, 9, 12, 18.